## LADNER v. BOWLES, Price Administrator.
### No. 109.

United States Emergency Court of Appeals.
Heard at Washington March 3, 1944.

Decided May 12, 1944.

John Ladner, of Tulsa, Okl., pro se.

Harry H. Schneider, of Washington, D. C. (Richard H. Field, Acting Gen. Counsel, Nathaniel L. Nathanson, Associate Gen. Counsel, Sol M. Linowitz, Chief, Court Review Rent Branch, and Charles P. Liff, Atty., all of the Office of Price Administration, all of Washington, D. C., on the brief), for respondent.

Before MARIS, Chief Judge, and MAGRUDER and LAWS, Judges.

MAGRUDER, Judge.

In October, 1941, complainant bought a brick apartment building in Tulsa, Oklahoma. His rentals became subject to Maximum Rent Regulation No. 45 for the Tulsa Defense-Rental Area. This regulation was issued August 20, 1942, to become effective September 1, 1942, and established March 1, 1942, as the rent freezing date. 7 F.R. 6641.[1] Pursuant to adjustment provisions contained in the regulation, complainant petitioned for increases in the maximum rents with respect to three of the four apartment units in the building. These petitions were denied by orders of the area rent director. In accordance with the then existing provisions of the Administrator's Procedural Regulation No. 3, complainant protested to the Regional Administrator of the Office of Price Administration for the Fifth Region against these orders denying his petitions for adjustment. The Regional Administrator entered an order denying the protest, and complainant, deeming himself aggrieved thereby, duly filed his complaint in this court.

---

[1] The regulation was subsequently redesignated Rent Regulation for Housing, 8 F.R. 7322.

■ With respect to two of the apartment units, the landlord claimed an adjustment under § 5(a) (4) of the regulation on the asserted ground that "the rent on the date determining the maximum rent was materially affected by the blood, personal or other special relationship between the landlord and the tenant and as a result was substantially lower than the rent generally prevailing in the Defense-Rental Area for comparable housing accommodations on March 1, 1942." The "special relationship" was claimed to result from the circumstance that when complainant bought the apartment building in October, 1941, he took subject to existing leases, in one case not expiring until June 1, 1942, and in the other case not expiring until April 1, 1942, and hence that complainant was "personally powerless" to change the rentals in these two apartment units until said leases had expired. We think the Regional Administrator was right in ruling that this did not constitute a "special relationship" within the meaning of the adjustment provision. As we pointed out in Northwood Apartments, Inc., v. Brown, Em.App.1943, 137 F. 2d 809, 814, the general purpose of this adjustment provision was to afford relief in cases where the rent in effect on the maximum rent date did not fairly represent a bargaining valuation of the property for rental purposes under the then existing market conditions of supply and demand, but embodied a rent concession given to a favored tenant on some personal motive. There is nothing in the record to indicate that the rents under these two leases were fixed on any special personal basis; we must assume that they were the product of ordinary arm's length bargaining between the contracting parties. A separate adjustment provision covers the situation where the housing accommodations were, on the freezing date, subject to a long term lease. Section 5(a) (5), as amended, provides for an adjustment where there was in force on March 1, 1942, the rent freezing date, a written lease for a term commencing on or prior to March 1, 1941, requiring a rent substantially lower than the rent generally prevailing in the defense-rental area for comparable housing accommodations on March 1, 1942. But this provision avails complainant nothing, because the leases which were in force on the freezing date, March 1, 1942, were for terms commencing less than one year prior to that date. See Patrick Cudahy Family Co. v. Bowles, Em.App.1943, 138 F.2d 574.

Complainant also bases his claim for relief upon another adjustment provision covering the situation where, subsequent to the maximum rent date, the landlord had made a "major capital improvement" as distinguished from ordinary repair, replacement and maintenance. See OPA Rent Interpretation 4(d)-I, Pike & Fischer OPA Service, p. 200:1251. It appears that between March 1, 1942, and July 1, 1942, complainant made certain expenditures as follows: At a cost of $145.00 all the mortar in the joints of the brickwork on the front of the building was removed and the same repointed with mason cement for the purpose of waterproofing the building; a new roof was installed upon the building at a cost of $98.31; the old awnings were replaced with new ones at a cost of $59.25; the sign on the front of the building was replaced and four new mailboxes were installed for the use of the tenants, at a cost of $27.48; all outside openings were caulked, the exterior wood trim was painted, a brick curb was built across the back of the building and the grounds around the building were packed and graded so as to divert the water that runs down from a high bank at the rear of the building, the interior of one apartment unit was pretty completely redecorated, in another apartment unit the ceiling of the kitchen was repainted and damaged places around the dormer window in the living room were repainted, all at an aggregate cost of $224.-72. This item of $224.72 is not further broken down in the record except that it appears that the cost of redecorating the one apartment unit amounted to $72. The total expenditure for all the items mentioned amounted to $554.76.

What amounts to a "major capital improvement" is a question of fact and a matter of degree. The Administrator has conceded that a complete rehabilitation involving a general modernization and reconstruction of a property may, if it makes the property attractive in a different rental range, constitute a major capital improvement, within the meaning of the regulation, even though the individual items involved would, if considered separately, be normal repair, replacement and maintenance. See Gale Realty Corp. v. Bowles, Em.App.1943, 139 F.2d 496, 498.

■ In considering a protest against an order of an area rent director denying a petition for adjustment the Administrator must make a new appraisal of the case

on its merits; the protest should not be denied merely on the ground that the evidence is sufficient to sustain the action of the subordinate official. As we have recently had occasion to say in Smith v. Bowles, 142 F.2d 63, in acting upon such a protest it is the Administrator's duty to consider the order de novo in the light of all the economic data or other facts in his possession or of which he has taken official notice, including such new or additional evidence as may be in the record before him, and upon such reconsideration to dispose of the protest in such way as may then appear to him to be just and appropriate. On the face of the Regional Administrator's opinion denying the protest it appears that he failed to follow this course. His opinion states:

"Without commenting upon the evidence in the record in detail, it is the opinion of the Regional Administrator that such evidence supports the determination by the Area Rent Director that the character of the housing accommodations in issue were not changed substantially between the maximum rent date and the effective date of the Regulation by a major capital improvement as distinguished from ordinary repair, replacement and maintenance."

Upon the authority of Smith v. Bowles, the order denying complainant's protest is set aside and the case is remanded to the Price Administrator with directions to reconsider the protest and to make such disposition of it as on the whole record may be appropriate and just.