## WYNNEWOOD PARK CORPORATION v. BOWLES, Price Adm'r.

### No. 58.

United States Emergency Court of Appeals. Heard at Philadelphia May 11, 1944.

Decided June 1, 1944.

Samuel A. Goldberg, of Philadelphia, Pa. (Leon E. Sperling and Wolf, Block, Schorr & Solis-Cohen, all of Philadelphia, Pa., on the brief), for complainant.

Herbert H. Bent, Atty., Office of Price Administration, of Washington, D. C. (Richard H. Field, Gen. Counsel, Nathaniel L. Nathanson, Associate Gen. Counsel, and Warren L. Sharfman, Chief, Court Review Rent Branch, all of Office of Price Administration, all of Washington, D. C., on the brief), for respondent.

Before MARIS, Chief Judge, and MAGRUDER and LAWS, Judges.

MARIS, Chief Judge.

The complainant is the owner of the Wynnewood Park Apartments, situated in Wynnewood, Pennsylvania, in the Philadelphia Defense-Rental Area, and consisting of 227 separate housing accommodations. The apartment house was completed in 1939 and the rental of the apartments commenced in December of that year under a rent schedule which was then adopted. In February, 1941, the complainant concluded that its original rent schedule was too low and it accordingly adopted a new and higher rent schedule which it proceeded to apply as vacancies arose to the new tenants who took vacated apartments after that time. It took no steps, however, to

apply the higher rent schedule to the existing tenants but permitted their leases to be renewed from year to year at the original rates.

Maximum Rent Regulation No. 28,[1] applicable to the Philadelphia Defense-Rental Area, was issued on June 30, 1942, effective July 1, 1942, and fixed March 1, 1942, as the maximum rent date. That date found the complainant in this situation. 64 of its apartments had been vacated by the original tenants and had been leased at increased rentals[2] to new tenants who were then in possession. Four other apartments had been rented at increased rentals under leases entered into prior to that date for terms commencing thereafter. All other rentals then being received were at the old rates. After March 1, 1942, and before July 1, 1942, eleven additional apartments were rented at the increased rentals called for by the new schedule.

The interposition of the Maximum Rent Regulation prevented the complainant from continuing with its program of raising rents as vacancies arose. In an endeavor to secure the right to continue that program the complainant on September 1, 1942 filed with the Rent Director for the Philadelphia Defense-Rental Area a petition for the upward adjustment in accordance with its revised rent schedule of the maximum rents for all its apartments other than the 64 whose rents had been actually increased prior to March 1, 1942. While the application was thus general it was stated to be based upon the adjustment provision contained in Section 5(a) (5), of the Maximum Rent Regulation. The Area Rent Director denied the complainant's petition whereupon on December 9, 1942 the complainant filed a protest with the Regional Administrator of the Office of Price Administration for the Second Region who subsequently denied the protest. The present complaint was then filed in this court.

■ The only question which the complaint properly raises is whether the Regional Administrator acted arbitrarily or capriciously in denying the complainant an adjustment under Section 5(a) (5) of the Regulation. Although the complainant's protest included an objection to the Regulation itself that objection was clearly out of time and, therefore, not open to our consideration. Accordingly it was incumbent upon the complainant to bring itself within the terms of the adjustment provision of Section 5(a) (5). Armour & Co. of Delaware v. Brown, Em.App.1943, 137 F.2d 233. The adjustment provisions in question, as modified by Supplementary Amendment No. 9,[3] are as follows:

"Sec. 5. Adjustments and other determinations. * * * (a) Any landlord may file a petition for adjustment to increase the maximum rent otherwise allowable, only on the grounds that:

\*     \*     \*     \*     \*

"(5) There was in force on March 1, 1942, a written lease, for a term commencing on or prior to March 1, 1941, requiring a rent substantially lower than the rent generally prevailing in the Defense-Rental Area for comparable housing accommodations on March 1, 1942; or the housing accommodations were not rented on March 1, 1942, but were rented during the two months ending on that date and the last rent for such accommodations during that two-months period was fixed by a written lease, for a term commencing on or prior to March 1, 1941, requiring a rent substantially lower than the rent generally prevailing in the Defense-Rental Area for comparable housing accommodations on March 1, 1942."

■ Complainant's asserted basis for relief under this adjustment provision is that certain of its apartments were rented on March 1, 1942 for terms which had commenced more than one year prior to that date and that the rents of those apartments were lower than rents generally prevailing for comparable accommodations.

It is clear from the record that each of complainant's leases provided for a term of one year although they all provided for the automatic renewal of that term for a further period of one year and so on from year to year unless and until

---

[1] 7 F.R. 4913.

[2] 56 of these were at the increased rates of the new rent schedule. Eight of them were at increased rates which through an error of the complainant's superintendent were less than those prescribed by the new schedule.

[3] Issued November 23, 1942, 7 F.R. 9784. While the complainant seeks to raise a question as to the applicability of this amendment we think that it applied to all pending applications. Having failed to protest it within 60 days the complainant may not attack it now.

notice of termination is given by either party at least 60 days prior to the end of a term. In using the word "term", Section 5(a) (5) had reference to the term which was current on (or within two months prior to) March 1, 1942. It did not refer to previously expired terms under a lease even though the term which was current on (or within two months prior to) March 1, 1942 may have been merely an automatic renewal of the last of these. Patrick Cudahy Family Co. v. Bowles, Em.App. 1943, 138 F.2d 574. Consequently the fact that many of the complainant's apartments were rented under leases which had been in force for successive terms running back of March 1, 1941, did not bring it within the adjustment provision.

■ The complainant urges, however, that in the case of a number of its apartments as to which the terms of the existing leases were renewed for a further period of one year in March and April, 1941, the conditions laid down by Section 5(a) (5) were satisfied because on March 1, 1941 the 60 days period allowed for giving notice of termination had passed and the new terms had, therefore, become absolute and irrevocable more than one year before March 1, 1942. The difficulty with this contention is that it erroneously assumes that Section 5(a) (5) is concerned with the time when the landlord became irrevocably committed to the term which was in force on March 1, 1942, rather than with the time when the tenant's tenure began under the term in force on that date. As we said in the Patrick Cudahy Family Company case (pages 575, 576, of 138 F.2d): "This might seem a more rational basis for the adjustment; but we are concerned now only with the adjustment provision as written. It is clear that the provision relates to the date of the commencement of the term and not to the date of the execution of the lease." The passing of the last day for giving notice of termination under the lease without giving it makes the renewal term binding and is, therefore, the equivalent of the execution of a new lease. Section 5(a) (5) is not concerned with that event.

■ There was some suggestion on the part of the complainant that its policy of refraining from enforcing its revised rent schedule against its original tenants satisfies the requirements of Section 5(a) (5). It is quite clear that there is no merit whatever in this suggestion. Such a voluntary rental policy which the complainant was at all times at full liberty to change does not satisfy the requirement of the section for a written lease calling for a rent substantially lower than comparable prevailing rents.

At the complainant's request we gave it leave to introduce additional evidence before the Price Administrator as to the level of rents on March 1, 1942 for housing accommodations comparable to the apartments here involved. Pursuant to this authorization hearings were had by the Administrator, testimony was taken, and a supplemental opinion was filed by the Administrator holding that the rents of the complainant's apartments here in question were not substantially lower than those generally prevailing for comparable accommodations. In view of the fact that the complainant has failed to bring itself within the terms of the adjustment provision it becomes unnecessary for us to consider whether the Price Administrator was arbitrary or capricious in reaching this determination.

The complaint is dismissed.