**ANDREW ARMS, Inc., v. BOWLES,**
**Price Administrator.**

**No. 224.**

United States Emergency Court of Appeals.
Heard at New York Aug. 16, 1945.

Decided Sept. 6, 1945.

costs of producing farm commodities, the bill therefore requires that the return to the grower shall be adjusted. Increased labor costs as reflected in rising wage rates for *hired* farm labor must be included in determining the extent of increased costs to growers." (Emphasis supplied) (88 Cong.Rec. 7722.)

Henry N. Rapaport, of New York City (Rapaport Brothers and Allen H. Suffern, all of New York City, on the brief), for complainant.

Stanley D. Metzger, Atty., Office of Price Administration, of Washington, D. C. (Henry M. Hart, Jr., Acting Gen. Counsel, Nathaniel L. Nathanson, Associate Gen. Counsel, and Warren L. Sharfman, Chief, Court Review Rent Branch, all of the Office of Price Administration, all of Washington, D. C., on the brief), for respondent.

Before MARIS, Chief Judge, and McALLISTER and LINDLEY, Judges.

MARIS, Chief Judge.

The Rent Regulation for Housing for the New York City Defense-Rental Area [1] establishes March 1, 1943 as the maximum rent date for housing accommodations in that city. Section 5 of the regulation contains two provisions for adjustment of maximum rents which are pertinent in the consideration of this complaint. Subsection (a) of Section 5 provides, inter alia, that:

"Any landlord may file a petition for adjustment to increase the maximum rent otherwise allowable, only on the ground that: * * *

"(7) the rent on the date determining the maximum rent was substantially lower than at other times of year by reason of seasonal demand, or seasonal variations in the rent, for such housing accommodations. * * *"

It is provided that in cases under paragraph (7) of subsection (a) "the adjustment shall be on the basis of the rents which the Administrator finds were generally prevailing in the Defense-Rental Area for comparable housing accommodations during the year ending on March 1, 1943."

The other pertinent provision is contained in paragraph (8) of subsection (c) of Section 5, which was added to the regulation by Amendment 5.[2] This provides that the Administrator may order a decrease of the maximum rent on the ground that:

"The rent on the date determining the maximum rent was established by a lease or other rental agreement for a period of occupancy of one or more years, which provided for a rent concession during such period of occupancy in the form of either a rent-free period or an abatement of rent."

The fifth preliminary paragraph of Section 5 provides that in such case "the adjustment shall be on the basis of the average rent during the period of occupancy of the lease or other rental agreement in effect on the date determining the maximum rent." Apartment 3-I, the housing accommodation involved in this complaint, is a four room apartment in an apartment building located at 853 Riverside Drive, New York City. The building was purchased by the complainant in October, 1943. Prior to the complainant's purchase of the building apartment 3-I was rented for $52.50 per month pursuant to a written lease for a term commencing January 1, 1943 and terminating December 31, 1943. The lease contained a clause which read:

"Provided there are no defaults in the terms and conditions herein, there shall be no rent payable for the months of January, 1943 and December, 1943."

The complainant filed a petition for adjustment of the maximum rent for apartment 3-I requesting that the rent be fixed at $52.50 per month without concessions on the ground that "the rent on the date determining the Maximum Rent was substantially lower than at other times of the year because of seasonal demand or seasonal variations in rent for such accommodations." The rent director found that Section 5(a) (7), upon which complainant relied, was inapplicable since the complainant was not seeking an increase of the maximum rent of $52.50 per month. He denied the petition on April 13, 1944. In the meantime the tenant in apartment 3-I applied for a reduction of the maximum rent under Section 5(c) (8) by reason of the rent concession contained in the lease. By

---

[1] 8 F.R. 13914, issued October 8, 1943 and effective November 1, 1943.

[2] 9 F.R. 2087, effective February 22, 1944.

order dated May 29, 1944 the rent director ordered the rent reduced to $43.75 per month.[3]

The regional administrator denied the complainant's application for review of both orders. The Board of Review, to which the complainant's protest was referred for oral argument and consideration, recommended to the Administrator that the protest be denied and on April 19, 1945 the Administrator denied the protest. The complaint in this court was filed May 18, 1945.

The issue raised by the complainant in this court is a narrow one. It does not contend that either the regulation as a whole or Section 5(c) (8) thereof are invalid. It concedes that the reduction in the maximum rent from $52.50 per month to $43.75 per month is authorized by Section 5(c) (8) of the regulation. It urges, however, that the rent provided for by the lease was substantially lower than the rents for comparable accommodations on the maximum rent date as a result of the fact that the apartment had been rented in January rather than on October 1st, the customary rental date, and it contends that the Administrator erred in refusing to so find and to direct an increase in the maximum rent pursuant to the provisions of Section 5(a) (7) of the regulation.

The Administrator's explanation for the promulgation of paragraph (7) of Section 5(a) is that:

"In some portions of the New York City Defense-Rental Area, for some classes of housing accommodations, October 1st is the customary moving date. Where housing accommodations are affected by this custom, occupancy under a lease usually begins on that date. For such accommodations, should a lease be entered into for occupancy subsequent to October 1st, it is considered an 'off-season' lease, since the rent provided for in the lease may be lower than the rent normally received for the accommodations when the usual leasing practice is followed."

See Marx Realty and Improvement Company, Inc., decided September 29, 1944, 2 Opinions and Decisions, OPA, p. 3177. In the light of this reasoning it is quite understandable that the Administrator would seek to limit the right to an upward adjustment under Section 5(a) (7) to those cases in which the low rent is directly attributable to the "off-season" lease.

In furtherance of this purpose it is the practice of the Administrator to require proof that the lease in effect on the maximum rent date commenced after October 1st, that the rent on March 1, 1943 was substantially lower than the rent would have been for the subject accommodations had they been rented on the usual annual renting date and was lower than the rent for comparable accommodations in the area on the maximum rent date, that the building in which the subject accommodations are located had, on March 1, 1943, a pattern for October 1st occupancy and that the subject accommodations also had such a pattern. The Administrator has consistently held that proof of each and all these facts is essential to entitle a petitioner to an increase in rents over those fixed by the maximum rent date method where the ground assigned is that the rents on the maximum rent date were fixed by an "off-season" lease.[4]

The proof which the Administrator requires is, we think, entirely reasonable. His policy for rent control in the New York City Defense-Rental Area as expressed in the housing regulation is to freeze rents as they were on the maximum rent date. Because a too strict adherence to this method would under certain circumstances result in gross inequities the Administrator has promulgated adjustment provisions to provide for relief to the tenant by way of rent decreases and to the landlord by way of rent increases under

---

[3] The total rent during the term of the lease for apartment 3-I was $52.50 per month for ten months or $525.00. Divided by twelve months, the total period of occupancy under the lease, the average rent would be $43.75 per month.

[4] Marx Realty and Improvement Company, Inc., 2 Opinions and Decisions, OPA, p. 3177 (Sept. 29, 1944); Brighton Operating Corp., 2 Opinions and Decisions, OPA, p. 3174 (Oct. 7, 1944); Tish-ray Realty Corp., 2 Opinions and Decisions, OPA, p. 3162 (Nov. 9, 1944); Marjorie L. Egelhof, 2 Opinions and Decisions, OPA, p. 3234 (Dec. 13, 1944); Larchmont Apartments, Inc., 3 Opinions and Decisions, OPA, p. 3067 (May 22, 1945); Granel Realty Co., 3 Opinions and Decisions, OPA, p. 3085 (May 31, 1945); Weisman & Wiesenthal, 3 Opinions and Decisions, OPA, p. 3107 (June 15, 1945).

certain circumstances. Such adjustments, however, are exceptions and the applicant for relief must bring himself clearly within the specific adjustment provision. See Wynnewood Park Corporation v. Bowles, Em.App.1944, 143 F.2d 355. We turn then to an examination of the evidence to determine whether the Administrator erred in his conclusion that the complainant had not brought himself within the relief provisions of Section 5(a) (7) of the regulation.

The Administrator found that the complainant had not produced proof that on March 1, 1943 the building in which apartment 3-I is located had a pattern for October 1st occupancy or that apartment 3-I had such a pattern or that $43.75 rental per month was substantially lower than it would have been had apartment 3-I been rented on October 1st. These findings are supported by substantial evidence and must, therefore, be accepted. Rabkin v. Bowles, Em.App.1944, 143 F.2d 600.

The building contains at least 51 apartments. The complainant produced leases for 26 of these apartments. Of these but 11 were for terms commencing October 1st. Evidence that 11 out of 51 apartments (or even 11 out of 26 apartments) were rented for terms commencing October 1st is not sufficient to compel a finding that the building had an October 1st rental pattern. As to apartment 3-I, the housing accommodation herein involved, the complainant has produced no evidence bearing upon the rental pattern. All that the Administrator had before him was the "off-season" lease to which we have adverted. Whether October 1st was the usual commencement of the terms for this apartment and the lease before us was unique or whether the commencement of the term as of January 1st, which is provided for by the lease, represented the normal rental term for the apartment we can but speculate.

The complainant submitted no direct evidence that the "off-season" rental of $43.75 per month for apartment 3-I was less than the rental would have been on the maximum rent date had the term commenced on October 1st. It contends that this conclusion must be reached by virtue of the evidence which it has submitted as to other apartments in the same building. An analysis of the leases submitted by the complainant reveals that they present so many uncertain factors as to be almost without probative value upon the issue.

The complainant has shown no fixed relationship between the date of the commencement of the term of the lease and the amount of rent charged for apartment 3-I. It follows that the Administrator has no basis for allowing an increase in the maximum rent on the ground of "off-season" renting. It is urged by the complainant that the reason for its failure to supply the full proof required is because it did not become the owner of the building until many months after the lease had been entered into and that it then had great difficulty in obtaining the complete records as to the facts and circumstances surrounding the leasing of the apartment. Nonetheless the burden of establishing a case within the specific adjustment provision relied upon rested upon the complainant. See Gale Realty Corporation v. Bowles, Em. App.1944, 139 F.2d 496. The fact that it encountered difficulties in procuring the necessary evidence cannot have the effect of shifting that burden.

The complainant makes much of the fact that in October 1943, when it acquired the apartment building by purchase, the Administrator had made no public announcement of the need for proof to sustain a petition for adjustment such as he now requires. Consequently, the complainant urges, it did not collect the necessary data at a time when such information might have been available to it. It suggests that at that time there was no necessity to collate and preserve data as to the operating experience of the rented housing accommodations inasmuch as Section 5(c) (8) which authorized the reduction of the maximum rent from $52.50 per month to $43.75 per month was not promulgated until February, 1944, some months after the complainant purchased the apartment building. This argument loses all force, however, when it is realized that the Administrator has never undertaken to direct landlords as to the books, records and documents they must keep.

The complainant urges that $43.75 per month is low when tested by maximum rents presently allowable for comparable housing accommodations. This may well be the fact. However, among the 12 grounds for an increase in maximum rent which were included in the adjustment provisions of the regulation at the time the

complainant filed its petition for adjustment there is none which permits an increase solely by reason of the fact that the rent is low. The maximum rent date method for rent control seeks to preserve rents at the levels which landlords and tenants had worked out for themselves by free bargaining in a competitive market. Chatlos v. Brown, Em.App.1943, 136 F.2d 490; Hillcrest Terrace Corporation v. Brown, Em.App.1943, 137 F.2d 663. If the allegedly low rent was agreed upon by the landlord in the course of free bargaining, the establishment of that rent level as his maximum rent is but the result of the freeze method of rent control.

We conclude that the Administrator was not unreasonable in his determination that the complainant has not brought itself within Section 5(a) (7) of the regulation. The Administrator's action in denying the complainant's petition for adjustment was, therefore, neither arbitrary nor capricious.

A judgment will be entered dismissing the complaint.