**JACOB GOODMAN & CO., Inc., v. PORTER, Price Adm'r.**

**No. 315.**

United States Emergency Court of Appeals.

Heard at New York, June 11, 1946.

Decided July 10, 1946.

Hyman W. Sobell, of New York City (Harry J. Halperin, of New York City, on the brief), for complainant.

Charles P. Liff, of Washington, D. C. (Richard H. Field, Gen. Counsel, Jacob D. Hyman, Associate Gen. Counsel, Harry H. Schneider, Chief, Court Review Rent Branch, and Mavis M. Clark, Atty., OPA, all of Washington, D. C., on the brief), for respondent.

Before MARIS, Chief Judge, and McALLISTER and LINDLEY, Judges.

LINDLEY, Judge.

Complainant is the owner of an apartment building at 518 W. 151 Street, New York City. On February 22, 1943, a fire destroyed the elevator and damaged the halls. Approximately $10,000 received from insurance companies and some $8,000 in addition were spent between March 1, 1943, and November 1, 1943, repairing the damage caused by the fire and in other repairs and replacements. The only question before the Administrator was whether the sums expended amounted to a major capital improvement so as to justify complainant in fixing the maximum rents at the first actual rental figures following the expenditures as provided in Section 4(d) (4) of the Rent Regulations, and the issue here , is whether the Administrator's finding to the contrary is arbitrary or capricious.

Major capital improvements include "complete rehabilitation" defined by the Administrator in his official Interpretation 5(a) (I) as follows: "A complete rehabilitation is a general modernization and reconstruction such as would make the property attractive in a different rental range. Even though the individual items involved would, if considered separately, be normal repair, replacement, and maintenance, if, in the aggregate, there is a substantial change in the character of the housing accommodations, there would be grounds for adjustment. The difference between a rehabilitation which is a major capital improvement and ordinary repairs is primarily a question of degree and extent. Only where the rehabilitation is so comprehensive that it would be expected to result in a comparatively high percentage adjustment in rental would it constitute a major improvement."

A majority of the Board of Review found that complainant had made no major improvement; that substantially all the expense incurred was either necessary at

the time or would have been required later in order that the landlord meet its obligations to its tenants and that the work had all been done in the period when a number of the units were vacant following the fire as a matter of convenience to the owner. One member dissented. The Administrator approved the conclusion of the majority.

The evidence discloses that the plumbing expense, for the most part, with the exception of the cost of the boiler, $2,090, covered only repairs of existing facilities. The City Building Department had notified the owner that the then existing boiler was in need of repair and that its use should be discontinued until its condition could be remedied and the work approved by the city. The old boiler was repaired in June, 1943, and a new boiler installed in September. Complainant was required to furnish heat and hot water. It produced no evidence that the new boiler would accomplish any more than what complainant was required to supply.

As to painting and scraping the floors, the Administrator concluded that the tenants did not receive anything in addition to what they were previously entitled to. The record does not show the condition of the premises prior to painting, how often it was customary to paint, or whether painting had become reasonably necessary. Nor is there any showing that any substantial permanent improvement resulted from painting and scraping. It was not enough for complainant to show merely that the rooms had been newly painted; to meet its burden, it should have shown also that painting, floor scraping and redecorating actually enhanced the value of the property over and above contribution of normal periodic work of such character.

As to the roof and incinerator screen, the roofer testified that the old roof was serviceable but that he recommended, rather than repairs, a new roof and a new screen. There is no evidence that the new roof was of a better type than the old. Obviously, in order to preserve the desirability of rental apartments the landlord must maintain a leak-proof roof. Mere installation of a new roof, without some showing that it was better than the old or

that some extra service was received by the tenant, does not compel a finding that it was capital improvement.

The carpenter stated that he installed some new shelves and broom closets, repaired kitchen windows, replacing glass where necessary, repaired doors and adjusted locks, weather-stripped the windows, built steps to the basement and rebuilt one fence and repaired another. Rent Inspector Lisby described the new kitchen closets as flimsy and poorly constructed; the weather-stripping as of little value. The other carpentry contributions were in the nature of repairs rather than capital expenditures. New shades were installed in "all windows which required them." Wherever necessary new glass was installed and windows were puttied. Repairing or replacing loose window-panes and supplying new shades where they were needed did not constitute a major capital expense. Rather, such additions were merely normal repair and maintenance, which it was the landlord's duty to contribute.

The electrical work consisted of repair of defective wiring or installation of new wiring and repair of the bell system. Some new fixtures were added, but the expense therefor was comparatively negligible. More than one-half of the stoves and about one-third of the refrigerators were reconditioned or repaired. The Administrator found these expenses necessary in order that the landlord discharge his obligation to the tenant to furnish such facilities. There is no evidence that the service of the stoves or refrigerators was any better or greater after the repairs than on the freeze date. A bill for supplies was not itemized. If this represented the purchase of expendible supplies necessary in normal operation of the building, it was not a major capital expenditure.

Sections of concrete in the basement, in front of the building and in the party wall, all of which were in need of repair, were torn out and replaced with new cement. The artisan stated that from a standpoint of utility the new sidewalk was unnecessary but that the owner did not want a "patch job" and requested the new and more costly work.

As the record stands it is impossible to determine how much of the masonry repairs should be credited to capital expenditures and how much to ordinary repair. Nothing in the evidence overcomes the finding that the cost of tiling, elevator landing, iron work and locksmith labor, were in the nature of replacements or repair.

The record is replete with details of evidence supplementing that which we have rather sketchily mentioned. Under all the proof, looking at the expenditures in the aggregate, as we think we are bound to do, and considering all the evidence, though the building was in better condition after the work was done than it was before it was done, we can not substitute our judgment of facts for that of the Administrator. Some capital improvements were made; but they were not of such substantial character or amount as to justify a reviewing court in saying that the Administrator has arbitrarily or capriciously failed to allow an increase in rents.

No attack is made upon the validity of the regulation. Under it, a complete rehabilitation contemplates such modernization, reconstruction or alteration of the premises as alters and improves the character of the housing accommodation to such an extent as to make the property appreciably more attractive, that is, places it in a higher rental range. Inasmuch as the building was not dilapidated, concededly had been maintained in "good condition" by the former owner, in order to establish higher rental, complainant was required to furnish evidence justifying a finding that there had been such complete rehabilitation. Whether it did so is a question of fact. Ladner v. Bowles, Em. App., 142 F.2d 566. In view of the evidence, we think there is no justification for holding that the Administrator did not have before him substantial evidence to support his conclusions; consequently, we can not pronounce his order arbitrary and capricious.

In Gale Realty Corporation v. Bowles, Em.App., 139 F.2d 496, relied on by complainant, we rendered no opinion upon the question of what expenditures would constitute a major improvement. We suggested that when certain expenditures had been completed, they "might" amount to a major improvement, but, recognizing that the question was one of fact, we ventured no opinion upon it.

In Ladner v. Bowles, Em.App., 142 F.2d 566, 567, likewise cited, the case was remanded because of the failure of the Administrator to proceed de novo.. The court said, "What amounts to a 'major capital improvement' is a question of fact and a matter of degree." See Johnson v. Bowles, Em.App., 145 F.2d 166; Rabkin v. Bowles, Em.App., 143 F.2d 600; Andrew Arms, Inc. v. Bowles, Em.App., 150 F.2d 972.

Judgment will enter dismissing the complaint.