## WOODS v. LEVINE et al.

### Civ. No. 480.

District Court, D. Maine, S. D.

March 26, 1948.

Edmund Sweeney, of Boston, Mass., for plaintiff.

Charles Pomeroy and Milton Wheeler, both of Portland, for defendants.

CLIFFORD, District Judge.

Plaintiff in the above entitled action has moved for summary judgment in accordance with Rule 56 of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c. The complaint charges that the defendants, as owners of several premises in Waterville, Maine, have demanded and received rents in excess of the maximum legal rents applicable to such premises. Plaintiff seeks an order of refund of overcharges to the several tenants, double damages to the Government in addition to such refund, and, in its memorandum in support of the motion for summary judgment, an injunction enjoining the defendants from any future rent violations.

Defendants' answer denies any overcharges and, in the event that such were found to have existed, any wilfulness. There were, in addition to these pleadings, requests for admissions, statements, and affidavits. A discussion was held in chambers, with counsel for both parties present, at which time the pleadings were examined, together with the contentions of both plaintiff and defendants, in an effort to ascertain what material facts existed without substantial controversy and what material facts were the subject of a real controversy. Following the discussion, a hearing was held in open Court in which oral arguments were submitted on the issue presented by the motion for summary judgment.

Both parties have objected to the various statements filed by the adverse party on technical grounds, each claiming that the supporting affidavits filed by the other failed to comply strictly with the requirements of Rule 56 or Rule 36 (respecting admissions) of the Rules of Civil Procedure. In this regard the Court has in mind its power under Rule 56 to permit further affidavits to be filed, and shall now rule on such information as is before it both in the form of pleadings which are in its opinion unexceptionable and in the form of information furnished by counsel for both parties.

The controversy has narrowed to one affecting two groups of premises, the first being those identified in plaintiff's motion for summary judgment, paragraph 4(e) (1-14), and the second being those identified in paragraph 4(e) (15-29), the latter being also referred to herein as the premises at 9 to 19 Main Street, Waterville, Maine. A different disposition of these two groups of claims seems proper.

The fact of overcharges in the first group of premises is conceded by defendants' admissions.

As for wilfulness, the plaintiff charges and the defendants admit the filing of approximately twelve registration statements containing incorrect information relative to the rent charged for these premises on the maximum rent date, January 1, 1946. But the defendants say and the plaintiff does not deny that the defendants were the owners of over 160 different premises for which registration statements were filed with the Area Rent Office. The plaintiff contends that the filing of these incorrect registration statements is evidence of evasive practices on the part of defendants and therefore is compelling evidence of wilfulness. Defendants, however, assert that it is unwarranted to infer either wilfulness or gross neglect from an error ranging around 7 per cent (a dozen violations out of 160 premises), and further state that the errors were the result of mistakes made by defendants' office employees.

In the absence of any other evidence of evasive practices concerning the first group of premises, the Court cannot on these facts summarily impute wilfulness or gross neglect on the part of the defendants.

Accordingly the Court finds, as to this first group of premises (paragraph 4(e) (1-14) that the defendants demanded and received overcharges as alleged by the plaintiff to the amount of $347.25. On the question of damages to be awarded, if any, beyond this amount, the Court is of the opinion that such constitutes an issue which should be resolved only upon a full hearing of the evidence.

As to the second group of premises, those at 9 to 19 Main Street, a more involved and difficult question presents itself.

Defendants claim that major capital improvements were made to this group of premises (an apartment building) between the maximum rent date, January 1, 1946,

and the effective date of the regulation terminating the so-called "free period", November 1, 1946. Landlords during this period could establish a new higher maximum rent following completion of a "major capital improvement". Defendants allege that they did complete major capital improvements, namely, a conversion from coal to oil heat, and insulation of the roof of the apartment building.

It appears that the conversion from coal to oil was commenced during the month of June and completed sometime prior to the early part of August, 1946, at which time the defendants demanded and received as rent an amount in excess of that received on the maximum rent date.

The contract for the insulation job was signed on October 23, 1946, about one week prior to the end of the free period, but the actual insulating of the roof was not fully completed until on or about the 18th day of November, 1946, or 18 days after the effective date of the regulations.

The registration statements of this second group of premises were filed late in the month of January, 1947, with the consent of the Area Rent Office. These registration statements accurately recited the rent charged on the maximum rent date and the first rent demanded and received for such premises after the conversion from coal to oil.

The plaintiff contends that the insulating job, which was not completed until 18 days after the effective date of the regulation, cannot be considered as any justification for a higher rent. The Court is in accord with this view of the law and regulations.

The plaintiff contends also that the conversion from coal to oil does not constitute a major capital improvement, as a matter of law. The defendants, on the other hand, strenuously argue that the conversion from coal to oil in this particular case does constitute such an improvement.

One of the counsel for defendants states that he personally visited the Area Rent Office located at Bath, Maine, and conferred with a Mr. Quarrington, an official of that agency, and received the assurance that it was proper to regard the conversion from coal to oil and the insulation of the roof as major capital improvements and that his clients could demand and receive as rent the amount stated in the registration statements. No statement or affidavit from Mr. Quarrington in contradiction of this assertion was offered by the plaintiff. This Court is of course aware of the regulation requiring a written opinion from rent officials before reliance upon such advice can be used as a defense. 4732 Washington Apartments v. Crecdon, Em.App., 162 F.2d 416, at page 421.

If it is conceded, however, that such advice was given by a responsible representative of the Area Rent Office, this Court is of the opinion that there may be some basis for the claim made by the defendants that the conversion from coal to oil is a major capital improvement. In any event, this alleged advice would be material to the issue of wilfulness on the part of the defendants.

Defendants have cited, in their brief, certain interpretations relating to the matter of major capital improvements promulgated by the general counsel of the agency administering the rent regulations. Interpretation 5(a) (1) (I) made by the general counsel is cited in their brief. This interpretation includes in the concept of major capital improvements, "a structural betterment". It defines this later term as follows:

"A structural betterment is a qualitative improvement, even though such an improvement is in part a replacement. Within this group would be the modernization of an existing bathroom, the installation of a modern heating plant replacing an antiquated system, a change in the interior partitions such as would improve the layout, and all changes of similar character."

Defendants have also cited Interpretation 5(a) (1) (II), having to do with improvements where the tenant furnishes his own heat. Plaintiff has objected to this citation as being misleading. He has suggested that the appropriate part of the interpretation is that having to do with arrangements where landlords supply heat and quotes the following: "Normally there is no basis for

an adjustment of the maximum rent where the landlord changes the heating unit or installs insulation, since ordinarily the effect of the change will be merely to enable the landlord to provide the quantity of heat that was provided on the maximum rent date."

■ The use of these two words, "normally" and "ordinarily" are important, because it is conceivable that the facts and circumstances relating to the conversion from coal to oil were such as to warrant the conclusion that this changeover resulted in a superior heating service and the rental value of the premises were enhanced thereby. In short, it is a question of fact, and inappropriate for decision through summary judgment procedure.

The cases cited by plaintiff on pages 3 to 5 of his brief do not warrant the conclusion that a coal-to-oil conversion is necessarily not such a structural betterment as to be a major capital improvement. Plaintiff has offered in his reply brief, page 11, as being "on all fours" with the issue in this case. In the Matter of 1440–54th Street Realty Corporation, 3 Ops. & Dec. 3048.

Plaintiff has quoted from this case a passage concluding with the following:

"Under the circumstances there is no basis for adjustment of the maximum rent, since there is no evidence to indicate that the heating service is superior to that rendered on the maximum rent date or that the rental value of the apartment has increased as a result of the change."

This would seem to classify the issue as one of fact. More directly to the point is another case cited by plaintiff, Jacob Goodman & Co. v. Porter, Em.App., 156 F.2d 549, where the Court said at page 551:

"* * * complainant was required to furnish evidence justifying a finding that there had been such complete rehabilitation (as to place the property in a higher rental range). Whether it did so is a question of fact."

And for the latter proposition the Court cited Ladner v. Bowles, Em.App., 142 F.2d 566, at page 567, where Judge Magruder stated, "What amounts to a 'major capital improvement' is a question of fact and a matter of degree."

■ Defendants have argued that since the Administrator has at no time taken any action under Regulation 5(c) (1) to roll back the rents on the premises at 9 to 19 Main Street, the rent set by the landlords under Regulation 4(d) during the free period, after the completion of the alleged major capital improvement, is still the maximum legal rent. The Court is of the opinion that to invoke the landlord-rent-establishing regulation, 4(d) (4), there must first be a project completed which measures up to the concept of a major capital improvement. Otherwise, a landlord could claim added rent because of the installation of a new doorknob and leave it up to the Area Rent Office to ferret out the absurdity. Thus the matter still comes down to the question of fact: is the conversion from coal to oil in the instant case such an added convenience to the tenant that it can be called correctly a major capital improvement, or has the rental value of the property substantially increased as a result of the change.

The defendants, having earnestly contended that the conversion from coal to oil is a major capital improvement, should have the opportunity to present evidence to substantiate their claim irrespective of their prospects of success.

The judgment of this Court may be summarized as follows:

(1) The defendants are hereby adjudged liable on plaintiff's motion (paragraph 4(e) (1-14) to the extent of the amount of the admitted overcharges, $347.25.

(2) The material fact of wilfulness, bearing on the appropriateness of further damages, is hereby adjudged to be in substantial controversy; and the motion must be denied so far as it concerns such further damages.

(3) The motion must also be denied so far as it concerns alleged overcharges affecting the premises at 9 to 19 Main Street.

(4) The material issues of fact relating to the premises at 9 to 19 Main Street are (a) whether the work done in converting from coal to oil constituted a major capital improvement, and (b) whether, in the event this fact is not established, the defendants have wilfully violated any provi-

sions of the relevant statutes and regulations.

Such being the case, the motion for summary judgment as to the first group of premises is granted as hereinbefore stated, and as to the second group of premises the motion is denied.