ROSEN v. POWERS et al.

No. 743.

Municipal Court of Appeals for the District of Columbia.

March 18, 1949.

---

[3] Tatum v. Townsend, D.C.Mun.App., 61 A.2d 478, and cases there cited.

Jacob N. Halper, of Washington, D. C., for petitioner.

John Cabot White, of Washington, D. C. (Renah F. Camalier, of Washington, D. C., on the brief), for respondents.

Ernest F. Williams, of Washington, D. C. (Ruffin A. Brantley, of Washington, D. C., on the brief), for Robert F. Cogswell, of Washington, D. C., Administrator of Rent Control.

Before CAYTON, Chief Judge, and HOOD and CLAGETT, Associate Judges.

HOOD, Associate Judge.

This is an appeal by a landlord from an order of the Rent Administrator on landlord's petition for an adjustment of rents of an apartment house.

The petition sought an adjustment on three grounds: First, "peculiar circumstances" under section 4(a) of the Emergency Rent Act;[1] second, a substantial rise, since January 1, 1941, in taxes and other maintenance and operating costs or expenses, under section 4(b); and third, a substantial capital improvement or alteration made since January 1, 1941, under section 4(b).

With respect to the first ground, the examiner found no evidence as to peculiar circumstances. This finding is not questioned on appeal.

With respect to the second ground, the examiner found that the records submitted by the landlord showed a decrease in operating costs from January 1, 1941, through the period ending January 1, 1944, and showed an increase over January 1, 1941, through the period beginning January 1, 1944, and ending January 1, 1948, and that the real estate taxes were less for the year ending January 1, 1948, than for the year ending January 1, 1941. The examiner further found that the records submitted contained numerous errors and that the recent records were not kept according to sound accounting principles. The examiner concluded that the evidence presented was inadequate to form a basis for adjustment of the rent ceiling, and recommended an order dismissing the petition. The findings and recommended order were approved by the Administrator.

■ The landlord first contends that there is no authority in law for dismissal of the petition except for want of prosecution. This contention is clearly without merit. If a petitioner fails to show a basis for relief the Administrator must of necessity deny relief, and whether such denial takes the form of a dismissal or otherwise is immaterial.

■ The second and third points made are that the Administrator may not arbitrarily deny relief when there is a finding of increased operating costs. This contention assumes that there was such a finding here, but the examiner made no such finding. He found only that the records submitted showed an increase.

■ The fourth point is that the Administrator should not have inquired in this proceeding into the subject of increased income resulting from change of type of tenancy. This refers to a finding that the character of the type of rentals had changed due to a change of one apartment to transient occupancy and others to furnished apartments at higher rentals. Such changes in rentals had apparently been approved previously by the Administrator. We agree with the landlord that the Administrator is not to adjust rents on a net-income basis.[2] It is presumed that the higher rentals previously allowed by the Administrator were based on the changed type of occupancy or increased accommodations. Therefore, on a petition for adjustment of rent on account of increased costs, the previous increases allowed on a different basis were neither relevant nor material. However, the record does not indicate that the disallowance of the increase here sought was based on the allowance of the previous increases. If such was not done the immaterial inquiry by the Administrator did not constitute prejudicial error.

■ The fifth point is that the findings are contrary to the proof. The proof, as far as the record shows, consisted of books of account. The landlord acquired the property subsequent to January 1, 1941, and consequently his books related only to the later years. As the examiner found, the

---

[1] Code 1940, Supp. VI, § 45—1604.

[2] Cf. Hall v. Ring Management Co., D. C.Mun.App., 63 A.2d 656.

records of the landlord's predecessor in earlier years showed a decrease in operating costs over the year 1940. The landlord's books, as the examiner found, showed an increase in the later and current years. However, the landlord's records were not kept in a satisfactory manner and an accountant, engaged by the landlord, compiled from those records a statement of operating costs. The statement, so compiled, showed a material increase in costs for the current year over the year 1940; but the accountant's accompanying letter stated that the landlord's books consisted of a single entry ledger in which income and expenses were recorded but no control kept of cash or capital assets; that certain charges in the books represented estimated charges and the accountant had substituted for them figures submitted to him as the actual charges; that certain items in the books charged to expense represented capital assets and the accountant had made corrections on account thereof in his statement; and that other adjustments had been made. Among these adjustments was an addition of $750, being a charge made by the landlord for his services as resident and maintenance manager, but not shown on the books.

Thus, it is apparent that the Administrator was fully justified in his finding that the landlord's records for recent years were not kept according to sound accounting principles, and it is likewise apparent that the accountant's statement was prepared from such records, even though the accountant attempted to prepare a correct statement as far as possible.

We cannot say that the Administrator was wrong in concluding that the evidence presented was inadequate to form a basis for an adjustment of the rent ceiling. When a landlord petitions for an adjustment on the basis of increased costs and expenses the burden is upon him to show such increase by satisfactory evidence. Books and records, properly kept and properly verified, supply an evidentiary basis for a finding of increased costs.[3] Books improperly kept and manifestly requiring adjustments do not furnish such a basis unless when adjusted there is satisfactory proof that as adjusted the books reflect an accurate record of actual costs and expenses. There was no such proof here.

With respect to the third ground on which relief was asked, the Administrator found that the evidence of capital improvement consisted of replacement of the boilers serving the heating system and ruled that such replacement did not constitute capital improvement. The landlord contends this ruling was erroneous.

There was evidence that at a cost of $23,750 the landlord installed boilers, oil burners and oil storage tank, replacing previous boilers operated by coal. Did this constitute "a substantial capital improvement" for which section 4(b) of the Act authorizes an adjustment of rent?

Although the Administrator ruled that it did not constitute a capital improvement he stated no ground for so ruling and, as far as we are informed, the Administrator has never by regulation or interpretation defined the meaning of capital improvement. This is unfortunate for several reasons. First, without such an interpretation the several examiners in the Administrator's office have no official guide or standard and may reach contradictory conclusions on the same question. Indeed, the general counsel at the argument of this case conceded that there had been no uniformity of ruling on this question in the Administrator's office. Second, counsel representing either landlord or tenant have no criterion for their guidance in preparing and presenting evidence on the question. Third, an administrative interpretation, while not binding on the court, is both persuasive and helpful to the court. The Act does not define the term and we must approach the question without aid of statutory or administrative interpretation.

---

[3] Book entries are not necessarily to be accepted at face value. Here the landlord's books showed expenses for painting and papering for the most current year to be $3,268.22. In none of the previous years did such expenses exceed $1,500. On the surface this item was typical of neither past nor future years and required explanation.

■ Our search of legal and accounting authorities reveals no definite and fixed meaning of the term "capital improvement" which could with certainty be said was the meaning intended by Congress in the use of the term. Accountants use the word "improvement" generally in its dictionary sense as meaning a betterment or addition, recognizing that the line of demarcation between improvement and replacement or between improvement and repairs is not always clear.

■ We have concluded that substantial capital improvement, as the term is used in the Emergency Rent Act, means a substantial betterment from the viewpoint of housing accommodations and not necessarily from the viewpoint of the landlord's investment. In other words, to justify an increase in rent the expenditure must result in substantially better housing accommodations which would in a normal competitive market increase its rental value. Ordinarily this will present a question of fact.[4]

■ We hold that the evidence here presented did not require a finding by the Administrator that the replacement of the coal heating unit with an oil burning unit constituted a substantial capital improvement. Presumably the tenants received adequate heat from the coal burning unit and are receiving nothing substantially more from the oil burning unit, although the latter may be a more modern and efficient unit. The record shows no material betterment in the housing accommodations.

■ Our holding does not mean that on a proper showing a landlord may not receive relief on account of large capital expenditures such as those in this case. An adjustment of rent is authorized for a substantial rise in operating costs and expenses. Cost of depreciation is an operating cost. If capital expenditures by the landlord increase depreciation costs such increase is properly considered in determining increase in total operating costs.

Here the records of operating costs and expenses for the earlier years included depreciation as one of the items, but the records for the later years did not include depreciation. Thus there was no evidence as to increase, if any, in depreciation charges.

Affirmed.

CLAGETT, Associate Judge, concurs in the result.

[4] For a discussion of the meaning of "major capital improvement" as used in Regulation 5 under the National rent control, see official interpretation in 5 (a) (1), and Jacob Goodman & Co. v. Porter, Em.App., 156 F.2d 549; Ladner v. Bowles, Em.App., 142 F.2d 566; Gale Realty Corporation v. Bowles, Em.App., 139 F.2d 496. See also Taylor v. Bowles, 9 Cir., 147 F.2d 824; Taylor v. United States, 9 Cir., 142 F.2d 808; Woods v. Levine, D.C.Me., 77 F.Supp. 559; Henderson v. Morgan, D.C.Utah, 54 F.Supp. 441. Cf. Delsnider v. Gould, 81 U.S.App. D.C. 54, 154 F.2d 844.