## SULZER et al. v. BELLEVUE INCORPORATED.

No. 834.

Municipal Court of Appeals for the District of Columbia.

Argued Aug. 15, 1949.

Decided Sept. 1, 1949.

Smith W. Brookhart, Washington, D. C., with whom Benjamin H. Dorsey was on the brief, for petitioners.

Thomas H. Patterson, Washington, D. C., for respondent.

Ernest F. Williams, Washington, D. C., with whom Ruffin A. Brantley, Washington, D. C., was on the brief, for Administrator of Rent Control.

Before CAYTON, Chief Judge, and HOOD and CLAGETT, Associate Judges.

CLAGETT, Associate Judge.

This is an appeal from an order of the District of Columbia Rent Administrator increasing the rents on rooms occupied by nontransient tenants in the Bellevue Hotel. The Administrator, acting under authority of the local Emergency Rent Act, Code 1940, Supp. VI, 45—1604(b), approved an order of one of his examiners allowing a flat increase of $5 per room to compensate for a substantial rise, which he found to have occurred since January 1, 1941, in taxes and other maintenance and operating costs. The principal objection to the order is raised by certain of the tenants and is that the increase should have been upon a percentage rather than upon a flat rate basis.

The Bellevue Hotel, located at 15 E Street, N. W., near the Union Station and U. S. Capitol, and occupied in part by present and retired government employees,

has some cooperative features, although it is not a true cooperative of the type involved in suits before the local courts in recent years.[1] Of the 280 rooms over one-half are occupied by transients who pay regular hotel rates on a daily basis. These rooms have not been subject to rent control since April 29, 1948,[2] and the rates on them have been changed from time to time. The remainder of the rooms are occupied on a monthly basis and are still subject to rent control. As to such rooms there has been no rent increase since 1929, a most unusual circumstance.[3] The property is owned by a Delaware business corporation, having about 700 shares of 6% cumulative preferred stock and 205 shares of nonpar value common stock. Dividends on the preferred stock are current, or approximately so. Ten shares of the common stock are held in the Treasury and 195 shares are outstanding, of which 90 shares, or nearly one-half, are owned by persons living in the hotel. The so-called cooperative features are first that a common stockholder, after notice, has the right to occupy a room at the lowest rate possible for the maintenance of the building and second that such stockholders are charged less than nonstockholders would pay for the same accommodations. Apparently there is no constant relationship, either percentagewise or in terms of dollars, between the existing rates for stockholder and nonstockholder occupants of different rooms even when there is taken into consideration the fact that some rooms have private baths whereas in other cases the occupants of two rooms share the use of a bath. For example, one room which rents for $25 a month to a stockholder has a nonstockholder rate of $38.50, a difference of $13.50, whereas another room with a stockholder rate of $25 has a nonstockholder rate of $35, a difference of $10. There are other similar differentials. The spread between stockholder and nonstockholder rates ranges from a minimum of $5 per room per month to a maximum of $13.50 per room per month.

The Administrator's order now under attack affected 124 rooms, 90 of which are occupied by stockholders and 34 by nonstockholders.[4] Certain of the tenants affected by the order consented to it but 52 protested. Some of those who protested to the Administrator did not appeal. Thirty-two tenants are represented in the present proceedings, leaving 92 of the original 124 as to whom the order of the Administrator has become final either by acquiescence in the petition of the landlord, failure to protest to the Administrator, or failure to join in the present appeal.[5] Of the 32 tenants here on appeal 26 are stockholders and 6 are nonstockholders.

On the issue of whether any increase should be granted, the examiner who heard the case made written findings of fact, general in nature, of the character previously criticized by this court.[6] As we read

[1] Glennon v. Butler, D.C.Mun.App., 66 A.2d 519; Owens v. Liff, D.C.Mun.App., 65 A.2d 921; Hicks v. Bigelow, D.C.Mun. App., 55 A.2d 924; Abbot v. Bralove, D. C.D.C., 81 F.Supp. 532, affirmed D.C.Cir. 1949, 176 F.2d 64.

[2] Hotel accommodation charges were decontrolled by act of Congress, Pub.L. No.507, 80th Cong., 2d Sess., Apr. 29, 1948, D.C.Code 1940, §§ 45—1601, 45—1602, 45—1619.

[3] Apparently there was one increase about 1931, but it was subsequently rescinded.

[4] Figures of the sort here used are only approximate due to the fact that there have been some changes in figures since the original hearing before the rent examiner. Such changes would not materially change the result.

[5] Separate petitions were filed by the landlord for each occupant affected, a separate finding and recommended order was issued by the trial examiner in each case, and, while the Administrator issued a joint "statement, findings of fact and order", such order listed each of the cases in which protests were filed against the examiner's recommended order.

[6] The examiner's findings were dated November 17, 1948, effective November 29, 1948, whereas the first of our decisions criticizing such general findings was dated December 22, 1948, Winkler v. Ballard, D.C.Mun.App., 63 A.2d 660. See also Hall v. Ring Management Co., D.C. Mun.App., 63 A.2d 656; Proctor v. Miller, D.C.Mun.App., 63 A.2d 665; Shapiro v. Bombardier, D.C.Mun.App., 63 A.2d 772; Crisp v. Giles, D.C.Mun.App., 65

the record, however, we do not consider this point an issue in the present case. The examiner also found that occupants paying on a monthly basis, stockholders and nonstockholders alike, received regular hotel service except that there was a change of bed linens but once a week and a change of towels only three times a week.[7] The examiner then made the finding upon which this appeal is based: "4. It is found that the adjustment sought is within the expenses, was proved by proper testimony and *while ordinarily an increase is granted percentagewise no useful purpose will be attained by changing the request as made.*" (Emphasis supplied.)

Discussing the protest against the $5 per room increase, the Administrator in his statement affirming the examiner's order said: "Counsel for respondents lays considerable stress on the alleged arbitrary adjustments which vary from ten to twenty percent in the individual accommodations affected. At first glance, a rent increase of twenty percent might carry the implication that this rental adjustment resulted in the collection of an exhorbitant rent. This impression disappears, however, when there is taken into consideration the fact that many of the rooms involved in the twenty percent adjustment are rooms in a recognized hotel, carefully conducted and supervised, and for which the tenant pays $25.00 per month including maid service, or an approximate rental of 85 cents per day. Reduced to its last analysis, the adjustment results in the tenant being called upon to pay $1.00 per day for the rooms instead of approximately 83⅓ cents per day. In view of the foregoing consideration of the record, the Administrator adopts the findings of the Examiner in each of the cases involved herein and further finds that the action of the Examiner in granting the increases complained of was not arbitrary and was, on the contrary, the most equitable manner in which to adjust the rental ceilings applicable to all of the housing accommodations involved in this case which is unique in that it is the only hotel in Washington owned and operated under a cooperative ownership."

The statute, Code 1940, Supp. VI, 45—1604(b), provides that upon the filing of a petition for a rent increase upon the ground of an increase in taxes or operating expenses since January 1, 1941, " * * * the Administrator may by order adjust such maximum-rent ceiling * * * in such manner or amount as he deems proper to compensate therefor, in whole or in part, if he finds such adjustment necessary or appropriate to carry out the purposes of this chapter." The part of the statute relating to review by this court of orders of the Administrator, Code 1940, Supp. VI, 45—1609(b), as amended, provides that, "No order shall be set aside or remanded unless the petitioner shall establish to the satisfaction of the court that the order is not in accordance with law, or is not supported by substantial evidence."

As was indicated in the quoted finding of the rent examiner, the method customarily followed by the local Rent Administration in allowing increases has been to determine, through one method or another, the total amount in dollars of the increase to be granted, compare such amount with the rents previously collected and thus determine on a percentage basis the increase attributable to each unit. The use of such method results, obviously, in allowing a smaller dollar increase on the lower priced accommodations than on the higher priced ones. In his brief the Administrator states: "It is the custom to raise room rates on a flat dollarwise basis." He points out further that in Winkler v. Ballard, supra, and companion cases where increases were granted on a percentage basis, the units involved were apartments, not rooms. He states also

---

A.2d 204; Crisp v. Caldwell, D.C.Mun. App., 65 A.2d 206; Rosen v. Powers, D. C.Mun.App., 65 A.2d 200; Sharpe v. Goldwyn, D.C.Mun.App., 65 A.2d 185; Newberry v. H. L. Rust Co., D.C.Mun. App., 65 A.2d 342.

[7] At the hearing before the examiner there was a decided difference between occupants as to services rendered, some expressing themselves as thoroughly satisfied while others severely criticized the management for failure to make repairs and furnish other services to occupants who paid on a monthly basis.

that many cases have been adjusted on a flat dollarwise basis even where apartments were involved; such increases, however, were not contested. He mentions one apartment case, involving the Suburban Garden Apartments with 200 units, where an increase was ordered of $5 per unit per month with the consent of the tenants. He cites also Casseen v. Realty Management, an apartment case involving Fairfax Village, wherein a flat dollarwise increase was granted and affirmed by the Municipal Court before appeals from the Administrator's orders were authorized to be taken directly to this court. We have examined the file in that case. The point at issue here was not raised in that appeal.

■ We are entirely clear that the Administrator, under the statute, may not use different methods in ordering rent increases in different cases except where a reasonable basis exists for such variations. In Winkler v. Ballard, supra, wherein it was shown that the Administrator in several cases had used different methods of calculation on a point not involved here, we quoted, at 63 A.2d 663, from the Administrator's counsel's brief in that case as stating: "It would appear illogical and unfair to use one method of computation for one case and another method of computation for another case. * * *" In reversing the Administrator's order in the Winkler case, we said: "We do not believe that the Administrator is entitled to adopt different fundamental bases in passing upon different requests for rent increases in cases where the fundamental facts are approximately the same."

Assuming, as we think we must from the record before us, that the accepted and customary method of adjusting rents, at least so far as apartments are concerned, is on a percentage basis, the question presented for our decision is whether a reasonable basis exists in the present case for increasing the rentals on a different or flat dollar basis. We have concluded that the question must be answered affirmatively, having in mind that the statute authorizes the Administrator to make adjustments "in such manner or amount as he deems proper" and that the further requirement of

the statute that we may not set aside an order of the Administrator unless it is established by the petitioner that the Administrator's order is not in accordance with law and is not supported by substantial evidence.

During oral argument the Administrator's counsel agreed to submit figures showing the relative increases which would result from the application of flat rate and percentage bases. The following table has been submitted for this purpose. The basis of the table is that for both calculations it was the purpose to increase the total annual rentals by $7,500. The amount of such rentals on the 124 units involved was $47,004 before adjustment and thus an increase of $7,500 would represent an increase of 15.95%. The table follows:

| Rent before adjustment | Rent adjusted on $5.00 basis | Rent adjusted on 15.95% increase |
|---|---|---|
| $25.00 | $30.00 | $28.99 |
| 27.50 | 32.50 | 31.89 |
| 30.00 | 35.00 | 34.78 |
| 31.00 | 36.00 | 35.94 |
| 31.50 | 36.50 | 36.52 |
| 32.50 | 37.50 | 37.68 |
| 34.00 | 39.00 | 39.42 |
| 35.00 | 40.00 | 40.58 |
| 38.50 | 43.50 | 44.64 |
| 50.00 | 60.00 | 57.97 |

The above table shows that as to present rentals of $31 per month and less the increase in dollars on a $5 per month basis would be greater than upon a percentage basis. As to rentals of $31.50 to $38.50 per month, a greater increase in dollars would result from a percentage adjustment than for a $5 a month adjustment. The differences as to such rentals would range from a minimum of 2¢ a month on a $31.50 room to a difference of $1.14 on a $38.50 room. (One room rented at $50 a month before the adjustment or $25 a month each for the two occupants. The rent on this room was increased to $60 a month by the Administrator, or $5 per occupant. As to this room, therefore, there would be a greater increase on the flat basis than upon the percentage basis.) Since the $5 per

month increase granted by the Administrator would result in an increase percentage-wise of less than 15.95% for 13 of the present 32 petitioners, that number would be chargeable with a greater increase were a percentage basis adopted and thus a reversal of the Administrator's order would be against their interest. Nineteen of the present petitioners, on the other hand, would be chargeable with a smaller increase on a percentage basis.

■ We rest our decision, however, not upon these strictly mathematical aspects, but rather upon our conclusion that sufficient facts are disclosed by the record to justify a distinction between apartments on the one hand and hotel rooms of this character on the other. As to such items as maid service and furnishing of bed linens and towels which are not ordinarily supplied in apartments, we believe it reasonable to assume that the cost of supplying such services is approximately the same for different rooms regardless of the size, location or relative rental value. We believe, furthermore, that the fact that stockholders obtain accommodations in the Bellevue at reduced rates has some bearing, intangible perhaps, but real nevertheless in the problem facing the Administrator. This factor at least makes the case unique. We believe, also, that we should give some weight to the statement of the Administrator in his brief that room rents, as distinguished from apartment rents, are customarily increased on a flat dollarwise basis. For all these reasons we conclude that a sufficient case has not been made out against the order of the Administrator to require reversal.

■ Two additional points involved in the Administrator's order have been raised by petitioner and justify mention. The first is that the Administrator denied tenants' request for a further hearing in order to produce evidence "to show the arbitrary and inequitable character of the flat increase." No showing has been made as to what further evidence would or could have been produced. The record in this case is full, and petitioners and their counsel in our view were given ample opportunity to present their case both to the examiner and to the Administrator. The final objection of petitioner is the claim that during the original hearing the trial examiner indicated that any increase granted would be upon a percentage basis. As pointed out by the Administrator, however, in his concluding statement and finding, this question was raised during the final hearing when counsel for petitioners indicated his understanding that the percentage method would be followed and the examiner replied, "Might be, might not be. It is according to how you agree. After all, this is a cooperative thing, and you probably wouldn't be bound as to what we ordinarily do." We believe this comment constituted sufficient notice to petitioners.

Affirmed.