**HOTEL ENTERPRISES v. PORTER,**
**Price Administrator.**
**No. 302.**

United States Emergency Court of Appeals.

Heard at Tallahassee, Fla., May 31, 1946.

Decided Sept. 12, 1946.

Rehearing Denied Dec. 6, 1946.

Julius F. Parker, of Tallahassee, Fla. (Leo L. Foster and T. T. Turnbull, both of Tallahassee, Fla., on the brief), for complainant.

Harry H. Schneider, Chief Court Review Rent Branch, of Washington, D. C. (Richard H. Field, Gen. Counsel, Jacob D. Hyman, Associate Gen. Counsel, and Walter L. Reitz, Jr., Atty., all of the Office of Price Administration, all of Washington, D. C., on the brief), for respondent.

Before MARIS, Chief Judge, and MAGRUDER and McALLISTER, Judges.

McALLISTER, Judge.

Complainant partnership operates the Cherokee Hotel in the capital city of Florida at Tallahassee. For at least 20 years in the past, prior to national price and rent control, the hotel has charged a special rate for certain rooms, during the biennial sessions of the state legislature. This special rate consisted of a flat charge for a room, regardless of how many persons used or occupied it. Thus, the hotel permitted one person to register for a room, although several persons might use, occupy, and sleep in it; and the person who registered could, in effect, sublet it to another individual or to a group. No additional charge was made by the hotel for the occupancy of the room by several persons, under the single reservation, or for the numerous additional special services furnished to such guests.

The explanation for this rather unusual situation is that during the sixty day legislative session, held every two years, there is an especially great influx to Tallahassee of legislators, lobbyists, political leaders, and other interested persons, and that the rental practices in question had been found satisfactory as well as required by the public. Accordingly, it had become the established custom among the hotels of the city over a period of many years.

For the purposes of this case, it can be said that the rent on the date determining

the maximum rent for the rooms in the Cherokee Hotel was substantially lower than that prevailing at the previous sessions of the Florida legislature since 1923.

On April 13, 1943, the operator of the Cherokee Hotel filed an application with the Area Rent Director for the adjustment of rentals for 43 listed rooms, setting forth that the rooms were being rented in the manner and at the same price which had been observed for all the legislative sessions since 1923 up to and including 1941. It was further submitted that all of the rooms which were rented to groups were for use as lodgings, offices, and conference rooms; that any person renting a room could have any number of guests use it overnight without extra charge; that the overnight occupancy of each room was approximately three persons, while occasionally five or six, or even more, might occupy it; that such method of rental necessitated a substantial increase in the services, furniture, and furnishings over that normally required; that the arrangement was designed to make a limited number of rooms serve a maximum number of guests; that great inconvenience would be caused to the hotel and to the guests if the long prevailing practice were prohibited; and that the already serious shortage of accommodations would be aggravated if the rental practices of the past were set aside. Moreover, the complainant set forth that it was not seeking to increase or in anywise change its method of rental because of the war or for any other reason, but that it was only asking to be permitted to operate its hotel in exactly the same manner and at the same rates which had prevailed for many years. Finally, it was submitted that approval of the established rental plan would cost the occupants of the rooms less than would be the case if each occupant were required to pay the rent fixed by the Rent Administrator, and that the hotel, at the same time, could accommodate more guests than with the usual and conventional operation.

On consideration of the foregoing petition, and after a careful investigation, the Area Rent Director, on May 7, 1943, entered an order in which he recited that he had found that the rent, on the date determining the Maximum Rent for the hotel accommodations in question, was substantially lower than at the previous sessions of the Florida legislature—with regard to the rooms in question—"by reason of seasonal demand or legislative session, and he deems it advisable to provide for different maximum rents for the session of the Florida Legislature during the months of April and May 1943. Therefore, on the basis of the rents which the Rent Director finds were generally prevailing in the Defense-Rental Area for comparable housing accommodations during the year ending March 1, 1942," he ordered that the maximum rents for the rooms in question be established during the period of April and May, 1943, as requested by complainant, at the rate charged during the legislative sessions for the prior twenty years.

All of this was entirely satisfactory to complainant; no complaint was thereafter filed on the order; and the Administrator never sought to review the determination. Nothing more was heard of the matter until 1945, when the operator of the hotel again filed a petition, seeking the identical relief asked and granted in 1943.

However, on the filing of the second petition, the same Area Rent Director who had granted the petition in 1943, denied the petition in 1945, for the reason that the facts stated in the petition "do not entitle you to the relief requested under Section 5(a)(7) of the Rent Regulation." This section provides that in the circumstances enumerated therein, the Administrator may issue an order changing the maximum rents otherwise allowable or the minimum services required. One of such circumstances is where the rent during the thirty day period determining the maximum rent for a room was substantially lower than at other times of the year by reason of seasonal demand for such room. In such cases the Administrator's order may, if he deems it advisable, provide for different maximum rents for different periods of the calendar year.

The Board of Review to whom the protest was referred for the hearing of oral arguments sustained the decision of the Area Rent Director, holding that the term, "seasonal demand" as used in the Regula-

tion, contemplated adjustment only in those cases where there was variation in rent at different times during the same year—or "an annual cycle of rent variation;" and that when the variations occurred biennially, they were not "seasonal" within the meaning of the regulation. The Board also held that the requested retroactive relief could only be had upon a showing of special circumstances, and that certain evidence relied upon by the complainant, in this regard, did not constitute such special circumstances as would support the granting of the retroactive adjustment—citing as authority for its decision, In the matter of Kuskin & Rotberg, Inc. v. Porter, Em.App., 153 F.2d 1016.

The Board's recommendations were approved in the Administrator's opinion accompanying the order denying the protest, in which he declared that a biennial seasonal demand did not relate to the seasons of the year, and, therefore, was not a "seasonal demand" within the meaning of the Regulation, "even though it occurs at regular fixed periods." Moreover, it was said that the petition could in no event be granted since the rentings upon which the petition was founded all occurred prior to the filing of the petition for adjustment.

■ On the question whether the period of April and May, during the biennial sessions of the state legislature was a seasonal period, and whether the demand for rooms at the hotel during that time constituted a seasonal demand, we are of the opinion that such a demand during the legislative sessions was clearly a seasonal demand. It was a demand that for at least twenty years had been regular, periodic, and recurrent biennially during the same months of the year. As used in the Regulation, "seasons" could not be taken as restricted to the four proverbial seasons of the year, or to winter or summer, spring or fall, or any two, or any one of them. "Season" is a broad comprehensive term. In some states, the moving of tenants is "seasonal," occurring on a single "seasonal moving date." A construction of the Regulation that excludes from consideration as a "seasonal demand," a demand occurring biennially, throughout the years, during the same months of the years, would be

unreasonable; and the fact that it is provided, in the regulation, that "the Administrator's order, may, if he deems it advisable, provide for different maximum rents for different periods of the calendar year," in no wise, according to our view, derogates from the foregoing conclusion. For, even though the rentals in question might not fall within the precise and exact wording of all the phraseology used in the Regulation, nevertheless, they obviously come within its spirit in that they are regular, recurrent, periodic, and of the same general type of rentals, admittedly covered by the terms of the regulation. That which is within the spirit of a statute or regulation is within its intent and coverage even though not within the strict letter thereof. Moreover, the fact that it is provided that the Administrator may provide different rents for different periods of the calendar year does not directly or impliedly prohibit the fixing of different rentals for different seasons occurring biennially.

We come, then, to the second issue in the case: whether, under the circumstances of this controversy, complainant, upon proof of its contentions, would be entitled to retroactive relief, in the adjustment of rentals during the 1945 session of the legislature, in spite of the fact that its petition was not filed until subsequently thereto. The determination of this question requires a brief consideration of the factual background of the case.

When the Tallahassee Defense-Rental Area was established, and the basic rental period set as March 1, 1942 (a time when the Florida legislature was not in session), complainant filed a schedule of the hotel rates which it was charging on that date. Subsequently, and a short time before the legislative session of 1943, complainant held numerous conferences with the general counsel for the Office of Price Administration in Florida. Thirty-seven days after the session commenced, complainant filed a petition seeking the approval of a special legislative rental schedule for forty-three of the hotel's rooms. This schedule listed the rooms under the plan heretofore described, according to which they would be rented to a person who registered for them, but could thereafter be used and occupied by

several guests without additional cost. Here, it may be observed that it is impossible for the hotel to know in advance of the legislative session how many rooms will be rented under the special plan. This fluctuates from session to session, and, in part, accounts for the fact that the petition could not be filed before the beginning of the session. In any event, the petition was approved by the Tallahassee Defense-Rental Office on May 7, 1943, and, as previously remarked, the hotel charged and collected the listed special rates with the full consent of the area office, during the 1943 session.

When the 1945 session took place, the hotel rented eighty-nine of its rooms subject to the special legislative rate. Of these, thirty-eight were the same rooms that had already been approved for such rate by the Office of Price Administration in 1943. The petition for adjustment of rent, which the hotel filed in 1943, was prepared under the supervision and direction of J. Allen Stiles, one of the partners in the company operating the hotel, and the individual who for several years prior thereto had been its manager.

In 1945, the legislative session began on April 1. On April 4, Mr. Stiles was stricken with coronary thrombosis which placed him in a critical condition for approximately four months. During this period, the management of the hotel was assumed by Mr. Stiles' wife and son. Mr. Stiles was the only one associated with the hotel who was familiar with the technicalities of operation under the rent control laws and regulations; and, until July 25, 1945, it was impossible for complainant's counsel, under all the circumstances, to take up the relevant matters and secure the necessary information from Mr. Stiles, and to secure his signature to a petition for adjustment of rents— which was not filed until the aforementioned date. This was subsequent to the conclusion of the legislative session of 1945.

■ In deciding that the petition could not be granted for the reason that the rentings all occurred prior to the filing of the petition for adjustment, the Administrator relied upon the decision of this court in Goodman and Mandelman v. Bowles, Em. App., 1943, 138 F.2d 917. In that case, it was remarked that under Section 4 of the rent regulation, the maximum rents were those in force on March 1, 1942, unless and until changed by the Administrator as provided in Section 5 thereof; and it was held that a reasonable interpretation of this provision was that changes in the maximum rents, by proceedings under Section 5, operate prospectively only.

However, we are here concerned with a state of facts calling for the application of other regulatory provisions which qualify to some extent the rule as stated in the Mandelman case. In the case of In re Kuskin & Rotberg, Inc. v. Porter, Em.App.1945, 153 F.2d 1016, the Administrator announced that, ordinarily, orders (adjustment of rent was there in question) "are not revoked, in a manner which vitiates their effect while outstanding, by subsequent orders, *absent a showing that the first orders were issued because of special circumstances,* such as fraud, misrepresentation, mistake of law, or denial of procedural due process of law, which prejudicially affected the outcome of the proceeding." (Emphasis supplied).

Under what regulatory provisions, then, may the Administrator revoke orders in a manner which vitiates their effect while outstanding? Authority so to revoke is found in Revised Procedural Regulation No. 3, in which it is provided, in Section 241 thereof, that any order entered in the protest proceedings "shall be effective from the date of its issuance *unless otherwise provided in such order."* (Emphasis supplied). It is upon the basis of this provision that the Administrator finds the authority to enter orders for adjustment of rents, retroactive in their effect—upon a showing of special circumstances, "such as fraud, misrepresentation, mistake of law, or denial of procedural due process."

■■ In the present case, we are confronted by the question whether the circumstances here are such "special circumstances" as call for the entry of an order for adjustment of rent, retroactive in its effect, in accordance with what was said by the Administrator in the Kuskin & Rotberg case, supra, and with Section 241 of Revised Procedural Regulation No. 3. This depends, in our opinion, upon whether the "special circumstances" warranting retro-

active orders, should include circumstances that result in a failure of equity and justice.

We have no doubt that circumstances that result in such inequity call for retroactive adjustment of rents. Obviously, the Administrator, in consonance with the above cited procedural regulation, has a large discretion, which he has already construed to embrace the granting of retroactive relief upon a showing of circumstances such as fraud, misrepresentation, and mistake of law. These circumstances are typical of those generally calling for the interposition of equity, and for the application of equitable remedies. If the Administrator has equitable discretion, his refusal to exercise it in proper circumstances would be an abuse of discretion, and, therefore, arbitrary and capricious; and it is not to be assumed that he would be deliberately guilty of dereliction of duty, and misuse of the powers confided to him. We are of the opinion that the Administrator is required to act in accordance with equitable principles in proper circumstances. Circumstances that result in inequity and injustice, are such circumstances—"special circumstances"—as call for the remedy of retroactive adjustment of rents, under the rent regulation, the procedural regulation, and the construction given thereto by the Administrator.

We come, then, to the consideration of the facts in this case to determine whether they are such as would result in inequity and injustice, unless a retroactive adjustment of rentals were granted by the Administrator.

The primary fact of significance in the case is that the Area Rent Administrator, after an extensive investigation, found that the special legislative rentals listed in the petition of 1943 were the same that had prevailed during the legislative sessions for at least twenty years prior thereto. Accordingly, he granted the application for adjustment of rentals, and subsequent to the commencement of the legislative session, gave the order retroactive effect from the beginning of the session. When the 1945 session began on April 1, the hotel had not yet filed its application for adjustment of rents for that session, and

on April 4, the partner and manager who was the only one who had the information necessary to file the application, was stricken with a heart attack. Of the accommodations listed on the application for adjustment of rents for the 1945 session, thirty-eight were the identical rooms for which adjustment was granted in 1943. It would seem superfluous for the hotel to request that these rooms be again granted the same legislative rents as in 1943, for there appears to be no conceivable reason, if it had already been found that the requested rents for such rooms were the same that had existed during the sessions for twenty years in the past, and the petition granted, why the hotel should be obliged to go through the same showing again, two years later. The explanation is that when the petition of 1943 was filed, the Emergency Price Control Act, 50 U.S.C.A.Appendix, § 901 et seq., by its terms, would expire in 1944, and it is the Administrator's holding that it is premature to request the same relief for future sessions, when it is not known whether the Act is to be extended.

In any event, the Administrator held that an order could not be given retroactive effect, because the petition was filed late. Yet, in 1943, the petition had not been filed until a considerable time after the opening of the legislative session in April; and the order granting adjustment with retroactive effect from the beginning of the session was not approved until thirty-seven days after the session began. As far as the complainant was concerned, this order was final. It could not secure a final determination of its validity from the Administrator in the protest proceedings; and the Administrator never reviewed it.

It thus appeared that the showing in 1943 was of such a nature as could be deemed to have satisfied the Administrator of the propriety of the order adjusting the rents for legislative sessions, as well as of the retroactive effect of the order to include the entire session, although both the petition and order were filed subsequent to the commencement thereof.

Obviously, because of this understanding, and also because of the impossibility of knowing how many rooms would be subject to the legislative rate that year, the petition

for adjustment, of 1945, was not filed before the commencement of the session. Certainly, without the assurance implicit in the conduct of the Office of Price Administration in 1943, it can be assumed that complainant would not have rented the rooms at legislative session rates in 1945, in clear violation of law, and thus have deliberately risked subjecting itself to the triple damages of approximately $17,000 for which it is now being sued by the Administrator.

If refusal to grant a retroactive order of adjustment is to be based upon the fact that the petition was filed late, the answer in this case is in the nature of an equitable answer—that practically all the tardiness in filing was due to the hotel manager's being stricken within a few days after the sixty-day session commenced, and completely disabled from filing the necessary papers, until the date they were actually filed. Here, too, it could have reasonably been assumed, from the 1943 order, that if the showing were meritorious, delay in filing the petition would not be a consideration upon which to base denial of retroactive relief. Added to the foregoing circumstances is the fact that the petition for adjustment was not to increase rates, or change methods of rental, but for the approval of a plan, which, when averaged, would, in all likelihood, cost the occupants of the hotel rooms less than would be the case if each occupant were required to pay the rent fixed by the Regulation.

From the foregoing, we are of the opinion that the circumstances disclosed in the present controversy are such as would result in gross inequity and a failure of justice, unless a retroactive order of adjustment were made to cover the rentals charged under the legislative plan during the session of 1945. It is our conclusion, therefore, that upon a showing which establishes the facts as set forth in the petition for adjustment, an order for adjustment of rentals should be made, retroactive to the commencement of the Florida state legislative session of 1945.

One further observation: Counsel for the Administrator concede that authority to revoke existing rent orders, and to grant retroactive relief, is made explicit by Revised Procedural Regulation No. 3, but they say that this applies only to rentals fixed by the provisions of an order, and not to rentals, as in this case, which were fixed by the provisions of a regulation. For the purposes of this case, we see no distinction that requires a disposition contrary to that which we have suggested above. The Administrator is empowered by Section 2(b) of the Price Control Act to establish a maximum rent or maximum rents by order or regulation; and in Section 2(c), there are provisions for classifications, differentiations, and adjustments of rentals to be made, either in regulations or orders. Throughout the statute, orders or regulations are spoken of as establishing rents or adjustments, and all provisions bearing on these matters have application to orders and regulations. In the rent regulation which we are considering, rents of a certain type are established with the same force and authority by virtue of orders (Section 4(g) and (h)) as other rents are established by the regulation itself. We perceive no reason for denying the application for retroactive orders in furtherance of equity and justice, because of such a narrow, technical construction of language.

In accordance with the foregoing, a judgment will be entered setting aside the acting Administrator's order of February 1, 1946 denying the complainant's protest and remanding the case for further proceedings not inconsistent with this opinion.