**4732 WASHINGTON APARTMENTS, Inc.
v. CREEDON.
No. 395.**

United States Emergency Court of Appeals.

Heard at Chicago, Ill., March 10, 1947.

Decided June 5, 1947.

Alphonse Cerza, of Chicago, Ill., for complainant.

Charles P. Liff, of Washington, D.C. (Carl A. Auerbach, Gen. Counsel, William R. Ming, Jr., Associate Gen. Counsel, Harry H. Schneider, Asst. Gen. Counsel, and Philip Travis, Atty., all of Washington, D. C., on the brief), for respondent.

Before MARIS, Chief Judge, and MAGRUDER and McALLISTER, Judges.

McALLISTER, Judge.

Complainant corporation is the owner of an apartment building in Chicago, containing 30 rented units. On September 29, 1942, the corporation filed a registration statement showing that a certain apartment unit was rented as an unfurnished apartment at a rental of $34 per month on the date on which maximum rents were established in Chicago, namely, March 1, 1942.

Two days after this registration statement was filed, the subject unit was rented furnished at a rental of $47.50 per month. No petition had been filed to increase the maximum rent for a furnished apartment in excess of the amount of $34 per month which was theretofore the maximum rent for the apartment, unfurnished. In order to secure an increase of rental for a furnished apartment over the established maximum rent for

the same apartment, unfurnished, it was necessary, by regulation, to file a petition for adjustment of rental upward.

Approximately two years after the renting of the furnished apartment at the monthly rental of $47.50, officials of the Chicago branch of the Office of Price Administration learned that the apartment was being rented on a furnished basis, and that there was some doubt about its having been registered. Accordingly, complainant was requested in writing either to register the property or notify the Area Office within five days that the apartment had been previously registered. Complainant did not reply to this letter, but five months later, on September 22, 1944, it filed a second registration statement showing that on October 1, 1942, the apartment had been rented furnished for $47.50 per month. This registration statement failed to disclose that the apartment unit had been rented on the maximum rent date. To the local office, this registration statement indicated that the monthly rent being received was a "first rent," that is, that the apartment had not been rented on the maximum rent date but had thereafter been rented for the amount of $47.50 per month—which would, in such a case, be the maximum rent for the premises, unless thereafter reduced by the Administrator on the ground that it was above the rents generally prevailing for comparable accommodations on the maximum rent date. It was, therefore, apparently assumed by the Area Office that the monthly rental of $47.50 was the proper and established legal maximum rent for the premises in question. This, of course was not the case.

Shortly after this second registration of the apartment unit on September 22, 1944, complainant filed a petition with the Rent Director, pursuant to the Regulation, requesting an order permitting elimination of the cleaning, decorating, and gas and electric services provided with the furnished apartment. In this petition, complainant represented that the maximum rent for the accommodations was $47.50 per month. This was erroneous. The Rent Director, finding that the rental value of the services to be decreased amounted to $8.50 per month, and relying upon the representation in the petition that the current maximum

rent was $47.50 per month, accordingly entered an order, on February 21, 1945, reciting that the maximum rent was thereby reduced from $47.50 to $39 per month. In April, 1945, complainant filed another petition pursuant to the pertinent provisions of the Regulation, requesting restoration of the amount of $8.50, prospectively, on the ground that it proposed to restore the services which it had been permitted to eliminate. This petition was denied for the reason that complainant had not obtained the tenant's consent to such restoration or increase in services, as required by the Regulation. Thereafter, complainant again sought the upward adjustment in rental on the ground that the services had never in fact been eliminated.

While this latter claim was pending, the Rent Director learned from other sources that the apartment in question had been rented unfurnished on the maximum rent date, and that, therefore, the maximum rent of $47.50—on a furnished basis—as disclosed by the second registration, was improper. Proceedings were, therefore, instituted by the issuance of notices, to which complainant responded, and the Rent Director then found that the difference in rental value of the accommodations by reason of the change from an unfurnished to a furnished apartment, and the addition of the services of gas and electricity was $12.50 per month, which, when added to the rent of $34 received on the maximum rent date, resulted in a maximum rent of $46.50 per month for the furnished apartment. An order was accordingly entered by the Rent Director establishing the maximum rent for the furnished apartment at $46.50 per month. On review by the Regional Administrator, this order was in all matters here pertinent sustained, except that the maximum rent was increased, prospectively, $1 to $47.50 per month. A protest was then filed by complainant requesting the Administrator to revoke all prior orders, and to establish the maximum rent for the furnished apartment at $47.50 per month, retroactively to October 1, 1942.

The order of the Rent Director had established a maximum rent of $39 for the period from February 21, 1945 to December 4, 1945, based upon an assumed furnished

rental, less $8.50 for decreases in services; and during the period. from December 4, 1945 to May 31, 1946, the maximum rent had been fixed at $46.50 (later increased by the Regional Administrator to $47.50), representing the unfurnished rental of March 1, 1943 of $34 plus an allowance of $12.50 for services, furniture, and furnishings.

In the protest proceedings, the Administrator found that no upward adjustment of the rent, as established on the maximum rent date at $34 was warranted for any period of time prior to February 21, 1945, the date of the Rent Director's first order, on the ground of any addition of furniture and furnishings, inasmuch as no petition for adjustment had been filed during such period and no equitable considerations had been demonstrated to exist requiring such extraordinary relief. Upon the entry of the Administrator's order denying the protest, the present complaint was filed.

Complainant first contends that when the Rent Director entered the order on February 21, 1945, reducing the rent for the apartment from $47.50 to $39 per month, he thereby found that the legal maximum rent for the apartment as furnished was $47.50 per month; that the tenant received and used the apartment as furnished with all services from October 1, 1942 to the date of the hearing on the complaint; and, since the Price Administrator found that $47.50 per month was a proper rental for such premises furnished, that the legal maximum rent for the apartment had been $47.50 per month from October 1, 1942 to the date of the hearing of the complaint.

■ We are unable to agree with these views. On March 1, 1942, the maximum rent date, the apartment in question was rented as an unfurnished unit for $34 per month. On the effective date of the Regulation,[1] July 1, 1942, such rent became the maximum rent and remained so, unless and until changed by the Administrator.[2] No petition was filed and no order was issued changing such maximum rent until February 21, 1945. At the time these accommodations were first rented on a furnished basis, there were no provisions permitting a land-lord to increase the rentals on his own initiative over those established on the maximum rent date, because of a change from an unfurnished apartment to one that was furnished. Contrary to complainant's claim, the mere fact that a second registration statement was filed in 1944 reporting a rental of $47.50 per month does not constitute approval by the Administrator of this rent as the maximum rent. Such a registration might well be assumed to be a registration of "first rent" accommodations, which are reviewed only to ascertain whether such rents are in line with the rents generally prevailing for comparable accommodations in the area on the maximum rent date. There was no approval of the new registered rent nor was there any estoppel on the part of the Administrator or the rent officials because of failure to review. The Regulation clearly provided that the maximum rent was the rent received on the maximum rent date, unless and until changed by the order of the Administrator—and that rent was $34 per month. Moreover, the circumstance that the Rent Director, on February 21, 1945, entered an order establishing a rental of $39 for the apartment as furnished, less the services which were professedly discontinued, cannot be construed as in any way establishing a maximum rental of $47.50 for the apartment prior or subsequent to that time; and it is accordingly irrelevant that the rental of $39 was based upon a reduction of $8.50, the value of the services, from the figure that was represented by complainant as the established maximum monthly rental, namely, $47.50. The assumption, implicit in the order reducing the rents, that the maximum rent before the reduced services was $47.50 per month—an assumption on the part of the Rent Director that resulted from complainant's misrepresentation that this was the established maximum rent, even though innocent—can in no sense be deemed a determination that such amount was the maximum rent before the date of the order, or that the collection of rent in that amount by complainant for four and a half years previously, was thereby ratified. The establishment of maximum rent is governed by

---

[1] 8 F.R. 7222.

[2] Section 4 of the Rent Regulation for Housing in the Chicago Defense-Rental Area.

the Regulation. Accordingly, complainant was not entitled to a retroactive adjustment of rents on the basis of a maximum rent of $47.50 per month for the period from October 1, 1942 to September 21, 1945.

Complainant argues that the Administrator should have revoked the order of the Rent Director of February 21, 1945, establishing the rental of $39 and should have entered an order establishing $47.50 as the maximum rent during the period that the $39 rental order was outstanding. This contention is based on the fact that although the maximum rent was established at $39 on complainant's own representations that certain services were discontinued, the actual fact is that such services were never changed in any way. Complainant insists that it is entitled to the amount of rental representing the value of such services, retroactively from the time of the order which was based on their discontinuance.

■ It has been consistently held that an order properly issued, and not resulting from fraud, misrepresentation, arbitrary or capricious action, or which is not otherwise contrary to law, will not be modified retroactively in such a manner as to vitiate its effect while it is outstanding. This policy is based upon the ground that retroactive modification of orders would destroy the effectiveness and certainty of maximum rent, would impose an excessive burden on the administration of rent control by inviting review of all orders, and would subject tenants to the necessity of making large back payments to landlords, thus weakening the stability of rental relationships.

■ Such a policy on the part of the Administrator cannot be said to be arbitrary or capricious. Here, complainant itself secured the order reducing the rentals as well as the order restoring them. The first order was based upon reduction of services—which were never reduced. Another petition was filed to increase the rentals for the restoration of the services—which were never restored. The ultimate order was based upon a further showing that there had never been any change whatever in the services furnished. The Administrator's refusal to revoke the prior orders which had been secured solely upon the representa-

tions, and at the behest, of complainant, merely applied the general policy of not modifying retroactively orders properly issued so as to vitiate their effect while outstanding except in the circumstances mentioned above.

■ It is, however, submitted by complainant that it acted in good faith, from the inception of rent control; that it fully disclosed all facts to the Administrator; and that during the entire period, it acted upon the advice of the officials of the Office of Price Administration to the effect that the legal maximum rent for the apartment in question was $47.50 per month. Complainant, therefore, contends that equitable considerations require that it be given relief by the establishment of this maximum rent retroactively to the date of the first renting of the unit as a furnished apartment. The facts in the case do not support these claims.

When complainant filed the registration of the unit as a furnished apartment, it did not disclose that the rent which it had received on the maximum rent date was $34 per month. When it sought an order permitting elimination of services, it represented, contrary to fact, that the maximum rent for the premises was $47.50. That its conduct was completely innocent of any improper intent is assumed. But that does not alter the circumstances that, through its own fault, complainant is solely responsible for its present predicament. It is true that the Administrator finally, in 1946, when the matter was properly presented to him, established the maximum rent for the furnished unit at $47.50; and that, probably, this was the amount at which the maximum rent would have been determined if application had been made to him back in 1942. This, however, in no way justifies setting aside the provisions of the Regulation which provide how maximum rent is established and how such maximum rents may be changed after they have been first established on the maximum rent date.

Complainant declares that this case calls for disposition in accordance with equitable principles on the authority of Hotel Enterprises, Inc. v. Porter, Em.App.1946, 157 F.2d 690, because, in all of its conduct,

complainant relied upon the representations of officials or personnel of the Office of Price Administration, and because the tenant received everything she bargained for. It is claimed by complainant that approximately one week after the renting of the apartment on a furnished basis, its agent commenced a series of visits to the Area Office in an attempt to comply with the Regulation; that the agent was advised that the amount of rent being charged appeared to be "all right"; and that she was further informed that an inspector would call to look over the premises. When no inspector appeared, the agent declares, she called again at the Area Office and was given a form to fill out, which was returned by mail to her with a letter advising that it was not correctly made out. The agent stated she again returned to the office and was given another form to fill out and in due course, she received a registration statement which she was required to fill out; that after trying several times and having the forms returned, she consulted a number of lawyers; that each lawyer filled out the registration form and every time they were returned to the agent as unsatisfactory; that finally one of the lawyers went to the Area Office, and, after being helped to fill out the registration statement, he signed it, and it was accepted for filing. The agent further states that she made at least 50 visits to the Area Office relative to the apartment in question. In an affidavit dated September 21, 1945, the agent stated that she had been informed "at a compliance conference held at the Office of Price Administration" that $47.50 a month was the legal maximum rent for the apartment in question, and: "that she was informed by an employee of the Office of Price Administration that the registration statement had been approved and that the sum of $47.50 was the proper rental" for the apartment.

It does not appear from the agent's affidavit on what date the alleged information was given to her that $47.50 was the maximum rent; or when the registration statement had been approved; or at what time the amount above mentioned was stated to be the "proper rental." No names of employees giving the claimed information were disclosed by complainant's agent nor was

there any documentary evidence to support these statements. Yet all of the claims of complainant's agent are consonant with the Administrator's contention that the second registration statement could most reasonably have been considered by the rent officials as a registration of a "first rent" accommodation. In such a case, after the filing of this registration statement, an official might well consider that the amount therein set forth was the maximum rent, on the basis of a first rent; but this would have been erroneous. If information had been given to complainant's agent to the effect that $47.50 was the monthly maximum rent, it doubtlessly resulted from the statements set forth by complainant in the second registration statement, or from the misrepresentation of complainant in the statement filed on December 12, 1944, that its maximum rent was actually $47.50 per month. Nothing in complainant's proofs is inconsistent with such conclusions. Complainant was at fault in not fully disclosing the circumstances of the situation, and is itself to blame for any impression that might have been conveyed to it by the rent officials as a result of its failure to represent the true state of facts to them. Under such circumstances, it cannot rely upon the conduct of the rent officials in this regard, to sustain a claim for relief. See Easley v. Fleming, Em.App.1947, 159 F.2d 422. In any event, it is undisputed that complainant increased its rent for a furnished apartment over its established maximum rent prior to any inquiry at the Area Office. When complainant filed its original registration statement, that statement (an official form) contained the notice: "Warning. The rent for this dwelling unit on and after the 'effective date' can be no more than the maximum rent entered in Section C, Item 7." The amount so entered on the form—emphasized by a large black arrow as the most important entry, was "$34.00." No explanation is given why complainant did not apply to the Office of Price Administration for an increase of its maximum rent for a furnished apartment prior to its renting of the unit as such. It is not claimed that it was misled or even mistaken in that regard. The alleged subsequent investigation of rents in complainant's building, two years later, by a

representative of the Rent Director, and his failure to inform complainant of the excessive rent charges for the furnished apartment, is not a ground upon which an estoppel or other equitable defense may be based.

None of the statements of complainant's agent relative to the approval of the rent charged for the furnished premises, by the rent officials, is corroborated by other witnesses or by written evidence of any nature. Moreover, Section 1300:243-246 of Revised Procedural Regulation No. 3 provides that a person may rely only upon a written official interpretation rendered by an authorized official in response to a request for such an interpretation in writing. The reasonable basis upon which this Regulation is predicated is that it would be impossible for the Administrator to disprove uncorroborated statements made by the continually changing personnel of thousands of price and rent administration employees, when such statements are offered by landlords in defense to actions in violation of the regulations.

Complainant relies upon Hotel Enterprises, Inc. v. Porter, supra, but we find nothing in this case which brings it within the principles there announced. In the cited case, which was unique among those coming before this court, complainant had relied upon an order of the Area Rent Administrator, adjusting rents retroactively, which, in so far as complainant was concerned, was final, for it could not have secured a final determination of its validity from the Administrator in protest proceedings, and the Administrator never reviewed the order. The order was limited in duration, on the ground that the Price Control Act, 50 U.S. C.A.Appendix, § 901 et seq., would expire in 1944 unless extended by Congress, and that it was premature on the part of complainant therein to request the same relief for future years. In 1945, the Price Control Act having in the meantime been extended by Congress, complainant again applied for adjustment of rent on the same basis as was authorized in the prior order. Due to a heart attack, one of the partners owning the hotel, who was also the manager in charge of all of its business operations including the rent control procedures, was unable to file the petition for adjustment until his recovery several months after the rooms had been rented. The Administrator then held that due to the lateness in filing, the adjusted rents could not be given retroactive effect. These and many other unusual circumstances formed the factual basis on which this court set aside such determination and remanded the case for further consideration on the ground that there were disclosed "special circumstances," within the Administrator's construction of that term as appeared in the case of Kuskin & Rotberg, Inc. v. Porter. Em.App.1945, 153 F.2d 1016, justifying retroactive relief to avoid gross inequity and a failure of justice.

In the case before us, there was no prior adjudication by the Administrator or the rent officials upon which complainant could claim reliance in charging and collecting a rental for the furnished apartment in excess of the amount for which the premises were rented on the maximum rent date. From all that appears, complainant casually concluded to rent its apartment on a furnished basis, either without feeling any necessity to comply with the rent control regulations, or without bothering to inquire what those regulations provided. A mere glance at the first registration statement which was filed by complainant's agent would have disclosed that the rent charged for the apartment could be no more than the amount of the maximum rent set forth in that statement. See Ambassador Apartments, Inc. v. Porter, Em.App.1946, 157 F.2d 774. In other matters, a nonchalant attitude with regard to rent control procedures seems to have been indulged in by complainant. It appears, for instance, that petitions in some cases were filed by complainant merely to quiet tenant's demands, and thereafter other petitions were filed, perhaps as an assurance that the services would be continued at the same rate. As an example, it is stated in complainant's brief that the petition to eliminate services was filed "because of the constant wrangling about the decorating and the unusually large gas and electric bills." In other words, this action was taken merely as a threat to the tenant; and the action taken by the Administrator in permitting such re-

duction of services, was, accordingly, based upon a non-existent state of facts, as the services were never reduced; nor were such services afterward restored, as complainant alleged in a subsequent petition. In any event, the rule of the Hotel Enterprises case is not here applicable.

It appears that the tenant received everything she bargained for, and that she secured the apartment at the rental which was ultimately fixed by the Administrator as the proper rental, and which would have been so determined at the time of the first renting as a furnished apartment, if application had been made by complainant at that time. Because of the technical violation of the Regulation by the complainant, it now faces liability to respond in treble damages to the tenant in question; and the injustice of this situation is emphasized. But this court has not been granted general equitable powers to protect parties against hardships and injustice in rent control cases. It is strictly limited in its jurisdiction by the provisions of the statute and the regulations, which do not authorize the granting of relief in this case.

One further contention is made by complainant to the effect that if the order of the Price Administrator is sustained, the case should be remanded with directions that an order of the Administrator provide that there is no duty to refund any money to the tenant who, it appears, has already instituted an action in the local Chicago court for treble damages. In support of this claim, complainant relies upon Section 4(j) of the Housing Regulation.[3] That section provides that where housing accommodations are changed from unfurnished to fully furnished units after July 1, 1943, and the landlord establishes his own maximum rent, which he is therein authorized to do, a registration statement must be filed within 30 days after such first renting, or any order decreasing the maximum rent will require a refund to the tenant. It was also further provided that if the Administrator finds that the landlord was not at fault in failing to file a timely registration statement, the order may relieve him of the obligation to make a refund. These provisions apply only where there has been a change from an unfurnished to a furnished apartment, subsequent to July 1, 1943, and are accordingly not applicable to this case.

In accordance with the foregoing, a judgment will be entered dismissing the complaint.

34 C.C.P.A.(Patents)

---

[3] See statement accompanying Amendment No. 2 (which added Section 4(j) to the Regulation). Pike and Fischer OPA Service, page 200.380.