JoNes, Chief Judge,
delivered the opinion of the court:
Pursuant to the terms of House Resolution No. 438, 82d Congress, 1st Session (the text of which appears below), the court herewith reports to the House of Representatives findings of fact[1] and conclusions thereon.
FINDINGS OE FACT
1. House Resolution No. 438, 82d Congress, 1st Session, as passed on October 4, 1951, is as follows:
Resolved, That the bill (H. R. 2772) entitled “A bill for the relief of C. E. Heaney,” together with all accompanying papers, is hereby referred to the United States Court of Claims pursuant to sections 1492 and 2509 of title 28, United States Code; and said court shall proceed expeditiously with the same in accordance with the provisions of said sections and report to the House, at the earliest practicable date, giving such findings of fact and conclusions thereon as shall be sufficient to inform the Congress of the nature and character of the demand, as a claim legal or equitable, against the United States, and the amount, if any, legally or equitably due from the United States to the claimant.
H. R. 2772 reads as follows:
Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, That the Secretary of the Treasury is authorized and directed to pay, out of any money in the Treasury not otherwise appropriated, to C. E. Heaney, of Omaha, Nebraska, the sum of $1,342. The payment of such sum shall be in full settlement of all claims of the said C. E. Heaney against the United States arising when he was unable to obtain a refund of sums he was required to pay to tenants of the Dundee Manor, Omaha, Nebraska, by an order of the rent director of the Omaha defense-rental area which was later reversed by the regional rent executive: Provided, That no part of the amount appropriated in this Act in excess of 10 per centum thereof shall be paid or delivered to or received by any agent or attorney on account of services rendered in connection with this claim, and the same shall be unlawful, any contract to the contrary notwithstand *366 ing. Any person violating the provisions of this Act shall be deemed guilty of a misdemeanor and upon conviction thereof shall be fined in any sum not exceeding $1,000.
2.Section 1492, Title 28 of the United States Code, provides:
The Court of Claims shall have jurisdiction to report to either House of Congress on any bill referred to the Court by such House, except a bill for a pension, and to render judgment if the claim against the United States represented by the referred bill is one over which the court has jurisdiction under other Acts of Congress.
Section 2509, Title 28 of the United States Code, provides:
Whenever any bill, except for a pension, is referred to the Court of Claims by either House of Congress, such court shall proceed with the same in accordance with its rules and report to such House, the facts in the case, including facts relating to delay or laches, facts bearing upon the question whether the bar of any statute of limitation should be removed, or facts claimed to excuse the claimant for not having resorted to any established legal remedy.
The court shall also report conclusions sufficient to inform Congress whether the demand is a legal or equitable claim or a gratuity, and the amount, if any, legally or equitably due from the United States to the claimant.
3. The plaintiff, C. E. Heaney, was at all times material herein the owner and operator of Dundee Manor Hotel, a hotel consisting of twenty-two rooms located in Omaha, Nebraska. He is a citizen of the United States and a resident of Omaha, Nebraska.
4. The operation of the hotel was initiated on or about July 1, 1943. On July 14, 1943, the plaintiff filed his original rate schedule with the Office of Price Administration in Omaha, Nebraska, in accordance with the Emergency Price Control Act of 1942, showing the rates charged for the rental of his hotel rooms.
5. On March 20, 1944, the Rent Director, Office of Price Administration, Omaha District Office, issued an amended Notice of Proceedings stating that the maximum rent for plaintiff’s accommodations should be decreased because his *367 rents were higher than the rents generally prevailing in the Omaha Defense Rental Area for comparable housing on the maximum rent date. On March 30,1944, the Rent Director issued the order announcing the maximum rent which plaintiff could charge.
6. On June 30,1944, the Chief Rent Attorney of the Omaha Defense Rental Area, Omaha, Nebraska, wrote plaintiff and stated that his office had just completed an audit of Dundee Manor and found that he had been in violation in regard to the rental rates that had been charged. As a result of being so notified, plaintiff, on July 13, July 15, and August 9,1944, refunded a total of $496.99 to his tenants who had been charged more than the maximum rent established by the order of March 30, 1944. These refunds covered rentals subsequent to March 30,1944, only.
7. Plaintiff submitted a “Landlord’s Application for Review of Rent Director’s Determination”, dated August 7, 1944, to the Omaha District Office, Office of Price Administration. Upon review by the Regional Administrator, Office of Price Administration, Region VI, Chicago, Illinois, the Regional Administrator issued an order, dated November 7,1944, modifying the order of the Rent Director of the Omaha Defense-Rental Area. The Regional Administrator’s order, which was effective November 7,1944, increased all the weekly maximum rental rates which plaintiff could charge at the hotel. This order also increased a few of the daily rates and decreased one; it increased most of the monthly rates and decreased some of them. A number of rates were left unchanged. The rates established by the Regional Administrator were substantially those in effect prior to March 30,1944. If the rates set on review had been in effect for the 31 weeks in question, plaintiff would have legally been entitled to collect an additional gross rental of $1,352.26. Plaintiff’s petition was limited to a claim for $1,342. The small amount in excess of that figure has been waived rather than amend the petition.
8. Prior to issuing the modifying order, the Regional Administrator, by letter of October 20, 1944, had proposed an adjusted schedule of rents to plaintiff. By letter dated October 25, 1944, plaintiff informed the Regional Administra *368 tor that the schedule was entirely acceptable to him. Thereupon, prior to the effective date of the Regional Administrator’s order of November 7,1944, plaintiff began to collect the higher rents from his tenants. He was subsequently forced to refund such higher rents collected during this period and these refunds amounted to $57.50. The text of the letter of October 20, 1944, containing the Regional Administrator’s schedule, was not presented in evidence, and it is, therefore, impossible to determine whether the plaintiff had a reasonable basis for undertaking to charge higher rents after he had received it.
9. It appears that, as a result of the reduction of rental rates, subsequently corrected for prospective application only, plaintiff suffered a reduction in income for the period involved of approximately $1,342.
CONCLUSION
There is no allegation that the order issued by the Rent Director, Omaha District Office, was arbitrary or capricious. Nor is there evidence in the record that would substantiate such a finding. The constitutional validity of the law under which he acted is well established. Bowles v. Willingham, 321 U. S. 503.
Whatever claim plaintiff may have must turn upon the retroactive validity of the Regional Administrator’s modifying order. Plaintiff had no right to collect from his tenants the difference between the amount allowed in that order and the lower rent authorized by the District Office for any period prior to the effective date of the order. Bowles v. Lake Lucerne Plaza, Inc., 148 F. 2d 967; cert. den. 326 U. S. 726. The reason for this is that the Regional Administrator’s modifying order operated prospectively only. The District Office order remained in effect until supplanted by the modifying order. The Emergency Court of Appeals, in answering a landlord’s contention that an order of the Rent Director should be construed to effect a retroactive upward adjustment of the maximum rent, said in 4732 Washington Apartments v. Creedon, 162 F. 2d 416, at page 419:
It has been consistently held that an order properly issued, and not resulting from fraud, misrepresentation, *369 arbitrary or capricious action, or which is not otherwise contrary to law, will not be modified retroactively in such a manner as to vitiate its effect while it is outstanding. This policy is based upon the ground that retroactive modification of orders would destroy the effectiveness and certainty of maximum rent, would impose an excessive burden on the administration of rent control by inviting review of all orders, and would subject tenants to the necessity of making large back payments to landlords, thus weakening the stability of rental relationships.
Since the modifying order gives the landlord no right to .collect back rents from his tenants on a theory of the retroactive effect of the order, a fortiori the landlord has no claim against the United States on that theory. We find that the plaintiff has no legal or equitable claim against the United States.
This opinion and the findings of fact, together with the conclusions thereon, will be certified to Congress pursuant to House Resolution No. 438, 82d Congress, 1st Session.
It is so ordered.
Laramore, Judge; Madden, Judge; Whitaker, Judge; and Littleton, Judge, concur.

 The findings are made by the court upon the evidence, the report of Commissioner Paul H. McMurray, and the brief and argument of counsel.